408 A.2d 653 (1979)
In re M. G., A. G., J. G., E. F. and T. T.
Nos. 1-79, 20-79, 21-79, 30-79 and 56-79.
Supreme Court of Vermont.
October 24, 1979.
*654 William J. Reedy, Vermont Legal Aid, Inc., Brandon, for students.
M. Jerome Diamond, Atty. Gen., Montpelier, and William Allen Kelk, Asst. Atty. Gen., Waterbury, for State.
Before BARNEY, C. J., DALEY, LARROW and HILL, JJ., and SMITH, J. (Retired), Specially Assigned.
BARNEY, Chief Justice.
In 1978 the Legislature set up legal machinery for a regular review of commitments to the Brandon Training School, a state operated institution providing custodial care and treatment for the mentally retarded. A special unit of the district court was established to carry out this review function. This same sort of procedure had already been provided for at the State Hospital at Waterbury, as well as at any other hospitals in the state providing hospitalization for the insane. See 18 V.S.A. §§ 7801-7803.
The legislative purposes are quite clear. There is, first, a check on the validity and necessity of the institutionalization. Second, machinery is provided whereby at early and regular intervals the continuing necessity for requiring those admitted to remain at the school is reviewed. In keeping with its designation as a school those who have been admitted are referred to by the statute as "students." Under these legislative directives the students are given a way to challenge, on a regular and repetitive basis, the legal justification for their institutionalization whether on the basis of improvement in mental health and competence, or on the ground of unjustified admission in the first instance. The concern of the Legislature stems from, and centers on, the fact that commitments to that school are a kind of confinement or restraint on personal liberty, an area of constitutional sensitivity.
The procedure for review is spelled out in 18 V.S.A. § 8810(e) dealing with the hearing provided for:
(e) If, upon completion of the hearing and consideration of the record, the court finds at the time of the hearing that the person admitted satisfies the criteria for initial admission to the training school, excluding residence, his continued admission to the training school is in accord with the law, and he is receiving treatment, education, rehabilitation and remedial care which is adequate and which does not appear upon reasonable inquiry to be available to him in a less restrictive environment, then the court shall order that the person's admission shall continue. Unless demonstrated to the contrary, less restrictive environments shall include community programs, residential and non-residential, which are appropriate to the needs and abilities of the person admitted.
The criteria for initial admission, excluding residence, referred to in that section, are found in 18 V.S.A. § 8805. They may be summarized as requiring determinations that the person is mentally retarded, is not afflicted with a contagious disease, is not violently mentally ill, and that there is suitable space available for accommodating a person of his mental classification, emotional stability and social maturity. Additionally, although not in controversy here, the issue of immediate and substantial risk of injury to the student himself, or others, in cases of release from the Brandon Training School was dealt with by the reviewing judges.
Several cases involving this review procedure were argued at about the same time. Although more than one judge was involved and the results were not identical in all cases, the legal issues were the same and the matters have, therefore, come to be disposed of in this single opinion. The State seeks review of the conditional discharges of M.G., A.G., J.G. and E.F. The *655 denial of a discharge to T.T. is being appealed on his behalf.
M.G. is thirty years old and mildly retarded. He has the equivalent social age of a seventeen year old. At the time of the hearing there were appropriate placements, that is to say, living arrangements available, if they could be coordinated with suitable employment. He had previously been on community placement which had come to an end through no fault of his, but rather of the home operator. His treatment team recommended him for placement in the community. The findings recite that the programs necessary for the student's support and habilitation are available in the community, but acknowledge that no appropriate community placement for this student has yet been located. The lower court granted the application for discharge by granting a conditional discharge with its operation delayed to allow the school to locate an appropriate placement. Failure to make that placement within a reasonable time was made grounds for further review.
E.F. is slightly more retarded than M.G. and is fifty-one years old. He is able to care for himself independently as far as personal care and needs, but would not be able to take care of himself without assistance if he became ill, and would need supervision in managing his finances. His treatment team recommended placement in the community, and, at the time of hearing, he was under consideration for several "possible" placements. The lower court made an order of delayed conditional discharge substantially as was the case with M.G.
T.T. is more retarded than either of those previously discussed. He is twenty-one years old and has been at the school since January, 1964. His retardation is classified as moderate with an I.Q. of forty. He suffers from Sturge-Weber Syndrome which is congenital. Among other things it causes some paralysis of his left side, early glaucoma of the right eye and petit mal seizures. The seizures are controlled by medications which must be administered to the student at prescribed times. He presently participates in off-campus programs in the town of Brandon designed to improve his vocational and social skills. The lower court found that, if released, the student could not, without extensive supervision, provide for his needs for nourishment, medical care, shelter or self-protection, and denied release on the ground that no lesser restrictive environment was appropriate other than the Brandon Training School itself. The court did order that he be moved to a less restrictive dormitory setting.
Two other students, A.G. and J.G., were also ordered conditionally discharged and placements have now apparently been found for them. Since we do not understand that the State wishes to undo these placements, we will not review them. The appeals of M.G., E.F., and T.T. remain for disposition.
The dispute between the parties centers on the statutory language speaking of alternate sources of treatment "available to him in a less restrictive environment." The students argue that once it is established that an alternative placement less restrictive than the Brandon Training School is appropriate for the student, there is a duty on the part of the state to provide that alternative even if it does not presently exist. The State, on the other hand, argues that students otherwise eligible for discharge are not entitled to release under the statutory provisions unless there is an adequate and appropriate community placement available for them.
As frequently happens in the law the problems represented by these cases derive from a conflict between two desirable and beneficial objectives. One is the constitutional concern for personal liberty, the other is the custodial duty of care owed those who cannot safely function without supervision. The dilemma springs from the dangers to the student in having his interest in liberty given so much recognition that his safe existence is in jeopardy. It must be taken for granted that, faced with that sort of dilemma, the temptation is to protect, rather than release. It is the existence of this dilemma that stands in the way of *656 making this liberty decision on the same grounds urged for those in punitive restraint for criminal activity.
The law, in these cases, is dealing with one of those groups of people whose personal circumstances call for special treatment and special protection, while, at the same time, seeking to prevent the unnecessary institutionalization of these people as was so often done in the past. The statutes and the cases, such as In re Allen, 82 Vt. 365, 371, 73 A. 1078 (1909), or O'Connor v. Donaldson, 422 U.S. 563, 574, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975), speak to the point that overconcern for welfare can lead to a disposition so unjustifiably restrictive as to amount to a violation of constitutional rights.
But these standards apply within broad limits. Not even the statutory language can be fine-tuned enough to distinguish between the varying needs and circumstances of each of the patients. No matter how varied the community resources are, or how extensive the state support of the community release programs, there will likely always be students whose care requires a judgmental evaluation as to the suitability of available resources. We agree that the state cannot fulfill the stated statutory purposes by limiting the available dispositions to either total discharge or retention at Brandon. On the other hand, individual students cannot command that the resources of the state be devoted to an institution specially designed to an individual need.
The dispute focuses on the release decision, but the statute embraces a larger purpose. This first review of the students is the initial step in determining which of the student population should not be confined to Brandon Training School under the law. This particular screening will, of course, result in the largest number of students suitable for discharge. It is more probable than not that the procedures for review may operate more speedily than the more involved placement process. Yet, at the same time eligibility must be recognized and provided for. Once the student population has all been reviewed and disposition made, the pattern of review and release will have a smaller and more predictable dimension.
It would be a serious mistake, fraught with risk of physical and psychological harm, to conduct this process in a manner purely adversary. A shortcoming or mistake in the development of the facts or law cannot be automatically responded to by a decision to release without any regard to the needs and welfare of the student. Turning the outcome on the basis of tactics, appropriate for private litigation between fully competent adversaries and concerned with damages or property rights, could represent a disastrous abandonment of the state's custodial responsibilities for these handicapped students. Thus there is imposed on the reviewing court an unusually heavy burden to see that any release or nonrelease decision is made in the light of the necessary facts. It is authorized to resort, on its own, to expert testimony. The statute, 18 V.S.A. § 8810(f) recognizes this in the following language:
(f) If the court does not order the person's admission to continue it may order further hearings or may appoint experts or may order that the person be discharged. An order of discharge may be conditional or absolute and may have immediate or delayed effect.
These cases are of a type calling for special procedures, as noted in the ABA Standards for Trial Courts, § 2.70. There the need to recognize trial proceedings that cannot be handled as ordinary adversary matters is discussed. The court must accommodate its functions to its responsibility for safeguarding a public concern going beyond the interests of the immediate parties, and of concern to society generally.
It should also be recognized that the evidence reveals not only that there are different kinds of community facilities representing varied gradations of supervision and care, but, also, that Brandon Training School itself has programs within the school that represent degrees of supervision from very close to some allowing individual activity on a daily basis within the local community, *657 participating in local activities and returning to the school dormitories for housing purposes.
Thus it is certainly an oversimplification to view the issue as merely a choice between continued admission and discharge. The community placements themselves represent graded stages of supervised freedom, and not, in the usual sense, full freedom. They do have the quality, in almost every case, of representing a less restrictive environment than the least restrictive program available under a Brandon Training School admission.
Although the student is represented by alert and dedicated counsel, there appears to this Court to be a shortage in the protection of his interests. The skills and talents of an attorney tend toward an aggressive stance promoting legal rights. This is proper. But where the client has a mental and social development that, in spite of physical age, is by definition, lower than that of a young adult, his situation is, at best, no better than that of a minor, and may frequently be much worse.
In making decisions with respect to his own interests in this litigation, adult maturity and judgment is called for. As we have noted in minority cases the attorney is not in a position to effectively make such decisions on his behalf. To do so compromises his advocacy function. It may be, also, that his natural guardian has interests in conflict with the student. See Dartmouth Savings Bank v. Estate of Schoen, 129 Vt. 315, 322, 276 A.2d 637 (1971). Therefore, we strongly recommend that trial courts give consideration to the appointment of a guardian ad litem, to provide a source of mature and disinterested advice to the student, to assist him in making informed choices, insofar as his capabilities permit, with respect to his own welfare. In re Raymond, 137 Vt. 171, 179-80, 400 A.2d 1004, 1008-09 (1979); In re Dobson, 125 Vt. 165, 212 A.2d 620 (1965).
That was not done in the cases before us, but we do not propose that that failure be elevated to the status of legal error requiring reversal. The statutory system places a very heavy responsibility on the judge passing upon discharge, and if the presence of a guardian ad litem can function to insure better consideration of the student's interests in a particular case, we are confident that the judges will see to the appointment.
In summary, the court reviewing the student's admission must deal with a series of critical concerns. In line with what has already been indicated, it must determine whether the protection of the student's interests requires the appointment of a guardian. Next, the inquiry must center on whether or not the capabilities of the student require, as a constitutional matter, his full discharge into society. Presumably such a situation could arise only through an error in the original admitting decision or improvement in capability either through therapy or physical development while under treatment. By far the larger number and more difficult decisions will involve continued admission to Brandon or release conditioned on residence at a community facility safely suited to the students' needs.
It appears from the statute itself that the state has taken upon itself the function of promoting the existence of community programs to assist in bringing those students for whom such progress is possible and safe further into ordinary community life and environment. But such programs and facilities cannot instantaneously be brought into being, nor, as a practical matter, can their variety be infinite. No real purpose is accomplished in duplicating care, treatment and facilities available at Brandon Training School, in some other facility in some other place. Thus the objective is to provide opportunities for community placement less restrictive than the least restrictive program available at Brandon in a reasonable range of supervised custody.
The test that must be met is that the custodial restraint represented by the program for the student at the facility involved amount to no more than is reasonably required for safety and the welfare and best interests of the student. As we have already noted, this determination is for the trial court. The burden of justifying *658 any measure of restraint falls on the party seeking it, in this case the State. The appropriate standard is the one used, that of clear and convincing evidence. Addington v. Texas, ___ U.S. ___, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979).
This is also the case with respect to the test of availability. To leave the question of availability entirely dependent upon whether or not the state had found a suitable placement for the particular student at the time of hearing would certainly reduce the review of the student's admission to little more than an empty ceremony. On the other hand, these cases do not present the occasion to gauge whether or not the judiciary may require the state to construct special facilities to provide community facilities of a nature less restricted than the Brandon Training School. But a judge sitting on these reviews may certainly require the state to make its best effort to find appropriate placements for students who are properly eligible to leave the school.
The judgments rendered in the cases under review represent proper implementation of the statutory purposes. In the cases of M.G. and E.F. a conditional discharge required the state to seek out placement for eligible students, with provision to bring the placement question forward if action was not forthcoming. The cases of A.G. and J.G., not now under review, are examples of successful placement. The case of T.T. is an example of a judgment that a student's least restrictive placement falls within the options available at Brandon Training School and not safely outside. The evidence supports this judgment as well.
In the case of M.G., Docket No. 1-79, the judgment is affirmed.
In the case of A.G., Docket No. 20-79, the appeal is dismissed as moot.
In the case of J.G., Docket No. 21-79, the appeal is dismissed as moot.
In the case of E.F., Docket No. 30-79, the judgment is affirmed.
In the case of T.T., Docket No. 56-79, the judgment is affirmed.