470 A.2d 1191 (1984)
In re A.C.
No. 82-451.
Supreme Court of Vermont.
January 6, 1984.
*1192 Pamela A. Marsh, Vt. Legal Aid, Inc., Brandon, for plaintiff-appellee.
John J. Easton, Jr., Atty. Gen., Montpelier, and John K. Dunleavy, Asst. Atty. Gen., Waterbury, for defendant-appellant.
Before BILLINGS, C.J., and HILL, UNDERWOOD, PECK and GIBSON, JJ.
HILL, Justice.
Pursuant to 18 V.S.A. § 8834(b), the Commissioner of Mental Health (Commissioner) filed an application for a judicial review of A.C.'s continued admission to the Brandon Training School.[1] By way of stipulation, counsel for A.C. and the Commissioner were able to reach agreement on most of the issues raised, including certain changes in her care and habilitation, as well as her future eligibility for discharge. The only issue raised at the district court hearing was whether A.C.'s current plan of psychiatric care and treatment at Brandon was appropriate.[2] On July 23, 1982, the district court conducted a full hearing consisting of extensive expert testimony. After hearing, the trial court concluded that A.C. was not receiving adequate and appropriate psychiatric care, since the medication prescribed for her, thorazine, was producing "unacceptable side effects." Accordingly, the district court ordered the Commissioner to halt the thorazine treatments. Following the issuance of the order, the Commissioner filed a timely notice of appeal.
The facts surrounding A.C.'s care and treatment are largely undisputed. She is a thirty-three-year-old woman who, with the exception of a brief hospitalization period at the Vermont State Hospital, has continued to reside at Brandon since her initial admission in November of 1961. A.C. has been diagnosed as being mentally retarded with organic brain syndrome. There is the additional possibility that she suffers from schizophrenia, but this has been difficult to determine due to her mental retardation. A.C. presently exhibits, on a low frequency basis, "inappropriate behavior" which includes abuse to others as well as herself.
*1193 Since September of 1981, A.C. has resided in the Women's Pre-Placement Cottage, where a revised behavioral program was recently implemented. She works approximately six hours a day in the Work Activities Center Program, a sheltered workshop, performing various tasks such as clipping strips of paper for place mats, collating, and assembling clothespins. At the hearing, there was uncontradicted testimony that there is a direct correlation between the scope, intensity, and frequency of A.C.'s maladaptive behavior, and the type of structured environment surrounding her. That is, her medical history suggests that she does considerably better in highly structured environments.
For the past ten years, A.C.'s behavioral symptoms have been controlled in part through the use of thorazine. Thorazine, an antipsychotic medication, has effectively modified her behavioral problems by inducing a degree of lethargy correlative to the dosage administered. When given 800 milligrams per day, a rather high dosage, A.C.'s activity level is comparable to that of a normal person. Like all psychotropics, however, thorazine produces certain side effects, some acceptable and some unacceptable. In A.C.'s case, thorazine has produced a symptom commonly referred to as "blue people syndrome," a condition caused by the deposition of blue pigment in the skin. As a result of A.C.'s partial albinism, the side effect is especially pronounced, particularly in the exposed areas of the skin. So long as the thorazine treatments continue, that condition will progressively worsen. Given the disfiguring side effects of thorazine, as well as the likelihood that A.C.'s behavior could be controlled by other medications, the district court concluded that the continued prescription of thorazine was inappropriate. It then issued its order.
On appeal, the Commissioner briefs two exceptions for our consideration: first, whether the district court erred when it concluded that the continued prescription of thorazine constituted inappropriate psychiatric treatment for A.C.; and second, whether the district court had the authority to order the discontinuance of thorazine treatments.
The Commissioner first claims that the evidence was insufficient to support the district court's conclusion that the thorazine treatment plan was inappropriate. When faced with a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the prevailing party, and exclude the effect of all modifying evidence. Quechee Lakes Corp. v. Terrosi, 141 Vt. 547, 552, 451 A.2d 1080, 1083 (1982); Green Mountain Marble Co. v. State Highway Board, 130 Vt. 455, 457, 296 A.2d 198, 200 (1972). "When the evidence is conflicting the credibility of the witnesses, the weight of the evidence, and its persuasive effect are questions for the trier of fact, and its determination must stand if supported by credible evidence even though there may be inconsistencies or substantial evidence to the contrary." Concra Corp. v. Andrus, 141 Vt. 169, 173, 446 A.2d 363, 365 (1982); Stamato v. Quazzo, 139 Vt. 155, 158, 423 A.2d 1201, 1203 (1980).
A review of the record reveals that at the time of hearing, A.C.'s behavior had improved significantly. With regard to the issue of medication, neither expert disputed the fact that the prescription of a psychotropic medication was essential. Although both experts agreed that thorazine had been effective in sedating A.C., there was substantial evidence to indicate that her environmental setting had as much to do with her improved behavior as did the thorazine. Moreover, the psychiatrist appearing on behalf of A.C. testified that there was a high probability that other psychotropic medication could effectively control her behavior without the adverse side effect of "blue people syndrome." The crux of the problem, according to the district court, was the absence of any valid attempt by the Commissioner to find an alternative to thorazine. Simply stated, there is substantial evidence in the record to support the district court's conclusion that continued administration of thorazine was inappropriate.
*1194 The Commissioner next challenges the authority of the district court to order him to halt the thorazine treatments. Since orders of commitment are directed to his care and custody, 18 V.S.A. § 8828(e), he insists that the court's reviewing powers, in proceedings brought pursuant to 18 V.S.A. § 8834, are strictly limited to a determination as to the availability of appropriate treatment, and whether or not the student's commitment should continue. Hence, the issue presented is whether the district court, in cases where it finds a particular treatment plan to be inappropriate, has the power to reject that plan. The Commissioner claims that by ordering a change in A.C.'s treatment plan, the district court exceeded its statutory authority. We agree.
In cases dealing with statutory construction, the primary objective is to give effect to the intent of the legislature, In re G.F., 142 Vt. 273, 279, 455 A.2d 805, 808 (1982); Wetterau, Inc. v. Department of Taxes, 141 Vt. 324, 327, 449 A.2d 896, 897 (1982), and if it can be fairly done, we will construe the statute to accomplish the purpose for which it was intended. Villeneuve v. Town of Underhill, 130 Vt. 446, 452, 296 A.2d 192, 196 (1972). Statutes are entitled to reasonable construction, but "`it is essential that the construction not be such that will render the act ineffective or lead to irrational consequences.'" In re G.F., supra, 142 Vt. at 279, 455 A.2d at 808 (quoting Audette v. Greer, 134 Vt. 300, 302, 360 A.2d 66, 68 (1976)). Finally, statutes relating to the same subject matter should be read in pari materia. Emmons v. Emmons, 141 Vt. 508, 512, 450 A.2d 1113, 1115 (1982); Villeneuve v. Town of Underhill, supra, 130 Vt. at 453, 296 A.2d at 197.
The statutory scheme presented in this case involves a group of people "whose personal circumstances call for special treatment and special protection," In re M.G., 137 Vt. 521, 526, 408 A.2d 653, 656 (1979), and its express purpose is to "establish procedures for determining appropriate care for mentally retarded persons in Vermont." 18 V.S.A. § 8820. Although close adherence to the statutory scheme is essential, we have previously recognized that "[n]ot even the statutory language can be fine-tuned enough to distinguish between the varying needs and circumstances of each of the patients." In re M.G., supra, 137 Vt. at 526, 408 A.2d at 656. Accordingly, "there is imposed on the reviewing court an unusually heavy burden to see that any release or nonrelease decision is made in the light of the necessary facts." Id. at 527, 408 A.2d at 656.
An individual committed to Brandon has a statutory right to a judicial review of whether his or her admission should continue. 18 V.S.A. § 8834. The pertinent provisions of the review procedure are set forth as follows:
If, upon completion of the hearing and consideration of the record, the court finds at the time of the hearing that the person admitted satisfies the criteria for initial admission to the training school, his continued admission to the training school is in accordance with the law, and he is receiving care, treatment, education, habilitation and remedial care which is appropriate and which does not appear upon reasonable inquiry to be available to him in a less restrictive environment, then the court shall order that the person's admission shall continue.
18 V.S.A. § 8834(e). Thus, on its face, the statute provides that one of the conditions to a continued admission at Brandon is the receipt of appropriate care, treatment, education, habilitation and remedial care.
Additionally, the district court has the discretion, when it fails to find one of the criteria set forth in 18 V.S.A. § 8834(e), to appoint more experts, order further hearings, or order the conditional or absolute discharge of the student. 18 V.S.A. § 8834(f). The statute makes clear, and we have so noted, that it is "an oversimplification to view the issue as merely a choice between continued admission and discharge," In re M.G., supra, 137 Vt. at 528, 408 A.2d at 657, for to so limit the district court's disposition would render the state *1195 incapable of fulfilling its duty to care for those unable to provide for themselves. Id. at 526, 408 A.2d at 656. In view of the class of individuals involved, the district court must take into consideration the particular needs and circumstances of the student when formulating a decision. To do otherwise would be tantamount to a breach of the duty to accord special treatment and protections to the mentally retarded.
In the instant case, it was undisputed that A.C.'s continued admission to Brandon was essential. As discussed, the district court found the continued prescription of thorazine to be inappropriate, and accordingly ordered the Commissioner to halt the treatments. If we accept the Commissioner's argument that the district court's authority was strictly limited to a determination of whether appropriate psychiatric treatment was available, and whether commitment should continue in lieu of discharge, then A.C. would be left without an adequate remedy for the violation of her statutory right to appropriate treatment. Moreover, such an interpretation would directly contravene those policies and principles outlined above.
We find this situation analogous to our recent decision in In re G.F., supra, 142 Vt. at 282, 455 A.2d at 810 (the juvenile court has the authority to reject an agency's placement plan). In the present case, the district court clearly had the authority to reject as inappropriate the continued administration of thorazine; but no more.
The order of the district court must be vacated and a new order issued in conformity with this opinion restricted to rejection as inappropriate the continued use of thorazine.
Reversed and remanded for the issuance of an order consistent with the views expressed herein.
NOTES
[1] The Brandon Training School is a state-operated institution providing custodial care and treatment for the mentally retarded. In 1978, the legislature established legal machinery for periodic reviews of commitments to Brandon. In an effort to facilitate the review process, a special unit of the district court was located at the school. 18 V.S.A. § 8822(a).
[2] In its brief, the Commissioner raises, for the first time, the issue of whether the district court possesses the authority to address the question of informed consent to treatment. Given our rule that absent glaring error, issues neither litigated nor decided below will not be addressed for the first time on appeal, Hojaboom v. Town of Swanton, 141 Vt. 43, 53, 442 A.2d 1301, 1306 (1982), we will not consider the issue.