518 A.2d 366 (1986)
In re C.B., F.C., J.J. and L.K.
No. 85-322.
Supreme Court of Vermont.
October 3, 1986.
*367 O. Whitman Smith, Burlington, for plaintiffs-appellees.
Jeffrey L. Amestoy, Atty. Gen., Montpelier, and Dena Monahan, Asst. Atty. Gen., Waterbury, for defendant-appellant.
Dixie Henry and Judith F. Dickson, Vermont Developmental Disabilities Law Project, Burlington, for amicus curiae, Vermont *368 Developmental Disabilities Protection and Advocacy, Inc., Vermont Ass'n for Retarded Citizens, and Vermont Ass'n for Mental Health.
Before ALLEN, C.J., and HILL, PECK, GIBSON and HAYES, JJ.
HILL, Justice.
The Department of Mental Health (Department) appeals an order of the district court directing the Commissioner of Mental Health (Commissioner) to "locate an appropriate placement for each of the petitioners within 90 days." We affirm in part, reverse in part, and remand for further proceedings not inconsistent with this opinion.
This case comes to us on a stipulated set of facts. The petitioners[1] are all mentally retarded individuals currently residing at the Vermont State Hospital (VSH), a facility designed to provide care for the mentally ill. The staff at VSH has no expertise or training in the field of mental retardation, and the parties agree that VSH cannot provide petitioners with appropriate treatment and habilitation.
In May and June 1984, counsel for petitioners filed applications for discharge pursuant to 18 V.S.A. § 7801. In all four cases consolidated on appeal, the parties stipulated that petitioners were not "patients in need of further treatment," see 18 V.S.A. § 7101(16), as they were not mentally ill. See 18 V.S.A. § 7101(14) (recognizing distinction between the mentally ill and the mentally retarded for purposes of involuntary treatment orders). Accordingly, the district court granted the applications for discharge. See 18 V.S.A. § 7801(c). It further ordered discharge to be delayed and directed the Commissioner to use good faith and his best efforts to locate appropriate placements.[2]
When no alternative placements were forthcoming, petitioners brought an action to enforce the placement orders. The district court concluded that the Commissioner had not used his best efforts to locate appropriate placements outside of the hospital, and it ordered the Commissioner to "locate an appropriate placement for each of the petitioners within 90 days."
The Department first argues that the special district court for the district of Waterbury does not possess equitable power. We recently addressed this issue in In re V.C., 146 Vt. 454, 456, 505 A.2d 1214, 1216 (1985), wherein we held that 4 V.S.A. § 436a, which provides that the special unit is established "for the sole purpose of exercising jurisdiction over applications for treatment of mentally ill individuals," simply defines that court's subject-matter jurisdiction. Once that jurisdiction is properly invoked, the court can exercise the powers of chancellor as provided in 4 V.S.A. § 219. Id.
The Department next claims that the district court did not have jurisdiction to order the Commissioner to use best efforts to place petitioners. Petitioners applied for discharge from VSH; the district court found that they were no longer patients in need of further treatment, and granted their applications. See 18 V.S.A. § 7801(c) ("If the court finds that the application is not a patient in need of further treatment, it shall order the patient discharged.") (emphasis added). According to the Department, the relief requested having been granted, the court's jurisdiction was at an end. We disagree.
The Department concedes that it owes petitioners a duty of care which transcends the court's discharge orders. See In re M.G., 137 Vt. 521, 526-27, 408 A.2d 653, 655 (1979) ("custodial duty of care owed to those who cannot safely function without supervision"). It contends, however, that petitioners had a "plain, adequate and complete *369 remedy at law" which limited the court's power to act in equity in ordering the Commissioner to use best efforts to locate appropriate placements. S.L. Garand Co. v. Everlasting Memorial Works, Inc., 128 Vt. 359, 362, 264 A.2d 776, 778 (1970).
In support of this position, the Department cites 18 V.S.A. § 7310, which authorizes a patient's attorney, guardian, or "any other interested party" to apply to the Board of Mental Health (Board) to inquire into the treatment and hospitalization of a patient. It argues that this remedy is adequate because the Board is empowered, after investigation and hearing, to "make any lawful order the case requires." 18 V.S.A. § 7311. It also contends that petitioners could have filed for admission to the Brandon Training School (Brandon), "a school established for the custody, treatment, education, habilitation and remedial care of mentally retarded persons," see 18 V.S.A. §§ 8822, 8838, and that such application would have invoked the court's statutory power to order placement.[3]
Before addressing the merits of these arguments, we first note that before a court's equitable jurisdiction is foreclosed because of the availability of a legal remedy, the legal remedy "must be competent to afford relief on the very subject matter in question, and be equally convenient, beneficial and effective" as the equitable remedy which would otherwise be available. Poulin v. Town of Danville, 128 Vt. 161, 165-66, 260 A.2d 208, 211 (1969). In other words, to be adequate the remedy at law must be "`practical and as efficient to the ends of justice and its prompt administration as the remedy in equity.'" Id. at 166, 260 A.2d at 211 (quoting Hall v. Village of Swanton, 113 Vt. 424, 428, 35 A.2d 381, 384 (1944)). Furthermore, one of the primary functions of equity is to afford complete relief while avoiding multiplicity of litigation. Begin v. Barone, 124 Vt. 421, 422, 207 A.2d 252, 254 (1965). We also note the somewhat unique factual setting of this case. The record reveals that three out of the four petitioners have languished in the back wards of VSH for more than two decades. All parties agree that VSH is not equipped to deal with mentally retarded individuals, and cannot provide petitioners with appropriate care and treatment.
Applying the above principles to the undisputed facts of this case, we fail to see how a petition to inquire into each patient's treatment and hospitalization pursuant to 18 V.S.A. § 7310 could provide a "convenient, beneficial, and effective remedy" for petitioners' claims. It would be both inequitable and contrary to the legislative scheme to require petitioners, after months of litigation in the district court seeking discharges, to file separate actions with the Board for review of treatment and hospitalization that all parties have agreed, and the court has found, are contrary to law. Under these circumstances, the procedure under chapter 175 of Title 18 (18 V.S.A. §§ 7301-7314) for review of treatment and hospitalization could not have been intended to apply. Specifically, § 7304 gives the Board "general jurisdiction of mental defectives and the mentally ill who have been discharged from a hospital or training school by authority of the board." 18 V.S.A. § 7304 (emphasis added). This same section also gives jurisdiction to the *370 Board over the same class of persons who are "not hospitalized." Id. Neither jurisdictional criterion is present in this case: all petitioners have been discharged by the district court, not the Board, and they all remain hospitalized. In sum, neither principles of equity jurisdiction nor statutory directive required petitioners to proceed under chapter 175 before seeking enforcement of the court's initial discharge order.
The Commissioner's claim that petitioners should have filed for admission to Brandon is likewise without merit. The parties have stipulated that Brandon is not an appropriate placement for F.C. or the Department's placement preference for C.B. or L.K. In fact, two of the petitioners successfully opposed the Commissioner's attempt to effect an administrative transfer without prior judicial hearing. Requiring petitioners to seek admission to a facility where neither they nor the Department agree they belong is not the type of "practical" and "efficient" remedy at law that can supplant the district court's equitable jurisdiction in a case such as this.
In sum, the alternative avenues of relief suggested by the State are not adequate given the procedural posture of this case. Neither alternative affords petitioners a "convenient, beneficial, and effective" avenue of relief. Moreover, both alternatives call for proceedings which are unnecessary in light of the stipulated set of facts before the court.
In In re M.G., supra, 137 Vt. at 526, 408 A.2d at 656, this Court noted that the State could not "fulfill the stated statutory purposes by limiting the available dispositions to either total discharge or retention at Brandon," and it sanctioned court orders requiring "the state to make its best effort to find appropriate placements for students who are properly eligible to leave the school." Id. at 530, 408 A.2d at 658. In petitioners' suit for enforcement herein the district court found that the Commissioner had failed to use his best efforts, and ordered the Commissioner to find appropriate placements within ninety days. The Commissioner contends that (1) the district court failed to make sufficient findings on this issue, (2) the record does not support the findings made, and (3) the district court improperly rejected the Commissioner's lack of resources argument. We do not pass on the Commissioner's first two arguments as we believe that the district court failed to give due consideration to Department's argument that it did not have the funds needed to place petitioners in community-based programming for the mentally retarded.
The Department stipulated that appellees were mentally retarded, not mentally ill, and therefore entitled to a discharge from VSH. It also stipulated that VSH could not provide appellees with appropriate care and treatment, and that less-restrictive alternatives than Brandon would be appropriate. Nowhere did the Commissioner stipulate that resources were not an issue. The underlying best-efforts placement orders did not contain any contingency related to the availability of financial resources. Moreover, there was nothing in the four orders which commanded a specific amount of the Department's financial resources. Thus, the district court's argument that the Department should be estopped from asserting a lack-of-funds defense is not persuasive. Although the district court also found that funding was generally available, it based this finding, in large measure, on the fact that petitioners are at the lowest level of funding priority within the Department, intimating that the problem could be solved by simply reallocating resources.
While it is undoubtedly true that every budgetary concern could be reduced to a question of allocation, we do not believe that the Legislature intended the courts to be overseeing how the Department of Mental health prioritizes needs, and allocates monies appropriated for the care of the mentally retarded. In fact, in defining the Commissioner's duties in this regard, the Legislature was careful to allow the Commissioner leeway to resolve problems imposed by fiscal constraints. See 18 V.S.A. *371 § 8835 (directing the Commissioner to ensure that, within the limits of funds made available for care for mentally retarded persons, current individual program plans, and appropriate and specific support personnel and services are maintained for each mentally retarded person placed in his custody); 18 V.S.A. § 8907(a) ("[T]he commissioner shall, within the limits of funds designated by the legislature for this purpose, ensure that community services to mentally ill and mentally retarded persons throughout the state are provided through designated community mental health agencies.").
In short, although our statutes clearly seek to place mentally retarded persons in the least restrictive environment which can provide appropriate care and treatment, they do not mandate that such treatment be provided when it is unavailable. See 18 V.S.A. § 8828(d) (providing that when patient can be cared for in less restrictive noninstitutional setting, but such placement is not available, patient may be conditionally committed to more restrictive available placement). The district court thus erred in dismissing the Commissioner's lack-of-resources defense, and in ordering the Commissioner to locate an appropriate placement for each petitioner within ninety days. When the evidence presented demonstrates that a less restrictive noninstitutional placement is unavailable due to lack of resources, the district court is limited to ordering the Commissioner to use his best efforts to find such a placement within a reasonable time.
The Vermont statutes are not unique in this respect. In In re Robert D., 486 A.2d 134, 137 (Me.1985), the Maine Supreme Judicial Court stated that Maine's "statute must be read as requiring the court to consider the choices which actually exist, and to select among the alternatives, if any exist, in a manner consistent with the best interest of the client." See also In re Wicks, 364 N.W.2d 844, 848 (Minn.App. 1985) ("There is no statutory authority for ordering [Department] to create a community placement when all community placements are currently full, or will not accept [the person entitled to discharge from the situation]").
Although petitioners initiated this action by requesting discharge, we note in closing that courts may look to the statutes dealing with the mentally retarded in fashioning relief in this area. These statutes are aimed at providing the least restrictive environment for retarded persons consistent with the welfare and best interests of the patient and the availability of such placements. Under 18 V.S.A. § 8828(d), for instance, "[i]f the court finds that the type of less restrictive environment required by the [petitioners] is generally available, but that there is no specific opening available at that time, and [petitioners are] otherwise ... person[s] in need of commitment," the court may conditionally commit petitioners to Brandon for a period not to exceed three months, with directions to the Commissioner to use best efforts to locate or develop community based placement alternatives. Id. The conditional commitment period can be extended, but only "for good cause shown." See 18 V.S.A. § 8828(d). The Commissioner bears the burden of proof on this issue. Scarcity of resources, however, is a legitimate argument to be raised in support of such extensions.
We recognize that these petitioners ultimately seek community-based placement, and that such placements would further this state's policy of providing treatment in the least restrictive environment appropriate to one's needs. See 18 V.S.A. § 8828(d). We also recognize that petitioners have a statutory right to appropriate care, treatment, and habilitation, 18 V.S.A. §§ 8821(4), 8822(c)(1), 8824; see In re V. C., supra, 146 Vt. at 456, 505 A.2d at 1216; In re A. C., 144 Vt. 37, 44, 470 A.2d 1191, 1195 (1984), and that the petitioners may only be committed to Brandon Training School for purposes of accomplishing specific treatment and habilitation goals. 18 V.S.A. § 8828(c). In three out of four cases consolidated *372 on appeal, the parties agreed that Brandon would be an appropriate, albeit not the preferred, placement alternative. Thus, a conditional commitment order would fully vindicate these petitioners' rights to appropriate care, treatment, and habilitation. Although the parties apparently agreed that Brandon could not provide F.C. with appropriate care and treatment, it is not clear from the record whether a specific community-based opening is available to her at this time.
In summary, we affirm the district court's determination that it had equitable jurisdiction to review petitioners' action to enforce the underlying placement orders. We reverse the district court's determination that the Commissioner failed to use his best efforts to place petitioners because we find that the court's analysis failed to adequately address the Commissioner's lack-of-resources argument.
Affirmed in part, reversed in part and remanded for further proceedings not inconsistent with this opinion.
NOTES
[1] One of the petitioners, J.J., has recently been placed in a community home, rendering his appeal moot.
[2] In one of the cases consolidated on appeal, the district court delayed discharge for a thirty-day period. In the other three cases, the district court delayed discharge indefinitely.
[3] If the Commissioner intended to suggest that the appellees failed to exhaust their administrative remedies, and therefore are foreclosed from seeking judicial relief, he is misreading the statute. 18 V.S.A. § 7801(a) clearly authorizes patients seeking discharge to file their petitions in district court without seeking relief in any other forum. The appellees have obtained discharge orders from the district court, and the propriety of these orders is not challenged by the Commissioner in this appeal. We therefore consider the Commissioner's arguments only insofar as they relate to the validity of the district court's actions subsequent to the initial discharge orders. Viewed in this manner, the Commissioner's arguments relate only to the question of whether the district court could make the challenged placement order when the petitioners had not sought relief through the other avenues of relief the Commissioner argues were available.