## State of Vermont v. Harold G. McCann

[541 A.2d 75]

No. 87-131

Present: **Allen, C.J., Peck\* and Dooley, JJ., and Barney, C.J. (Ret.) and Costello, D.J. (Ret.), Specially Assigned**

Opinion Filed December 24, 1987

---

\* Justice Peck heard oral argument but took no part in the decision.

*Kurt M. Hughes,* Chittenden County Deputy State's Attorney, Burlington, for Plaintiff-Appellant.

*William A. Nelson,* Montpelier, for Defendant-Appellee.

*Robert B. Hemley* and *Van Z. Krikorian* of *Gravel and Shea,* Burlington, for amicus curiae General Electric.

**Dooley, J.** This Court granted permission to appeal to the State under V.R.A.P. 5(b)(1) by order dated April 9, 1987. The defendant-appellee has moved pursuant to V.R.A.P. 5(b)(3) to dismiss this interlocutory appeal as improvidently granted.

█ As a preliminary matter, we must address the State's argument that dismissal of the appeal in the Supreme Court is not an available remedy under V.R.A.P. 5(b)(3) where the trial court has denied permission to appeal, and this Court thereafter grants such permission. The last sentence of V.R.A.P. 5(b)(3) expressly addresses and resolves this issue:

> If at *any time,* upon such motion or upon its own motion, the Supreme Court finds that no controlling question of law as to which there is substantial ground for difference of opinion has been presented or that a decision on such question would not materially advance the termination of the litigation, it may dismiss the appeal.

V.R.A.P. 5(b)(3) (emphasis added).

Turning to the merits of the jurisdictional issue herein, after careful review of the nature of the issues appellant seeks to appeal at this time, we have reconsidered our earlier ruling, and now conclude that permission to appeal was improvidently granted.

We start by emphasizing the procedural posture of this case. As required by V.R.A.P. 5(b)(1) the State sought permission to ap-

peal the interlocutory order in the trial court. On March 26, 1987, the trial court issued an opinion and order denying the State permission to appeal on a number of grounds: (1) the ruling on which an appeal is sought is fact specific and may change at trial based on the evidence produced; (2) the appeal will prolong ultimate termination of the case; (3) there is a potential for piecemeal appeals; and (4) the State is seeking an advisory opinion to determine whether to continue its prosecution, an inappropriate use of an interlocutory appeal. It is the denial of permission to appeal that was appealed to this Court.

The interlocutory order for which review is sought was issued on January 26, 1987. In it, the district court granted defendant's motion for leave to present evidence supporting the defenses of justification, necessity, and privilege to the charge of disorderly conduct. In conjunction with the motion, defendant submitted a detailed offer of proof relating to the use of weapons produced at the site of the alleged disorderly conduct by military and paramilitary groups seeking to overthrow the Nicaraguan government. The trial court's decision to grant the motion in limine was based expressly on its assumption that defendant would be able to prove at trial that which he offered to prove.

We must first address the standard of review in this case.[1] We have not, in the past, had occasion to define the standard of review in interlocutory appeal cases where the trial court has refused to grant permission. Since our power to review a trial court determination denying interlocutory appeal is not contained within a specific statute or within the general statement of our original jurisdiction powers, it must come under our appellate jurisdiction. See 4 V.S.A. § 2(a) (Supreme Court has "jurisdiction of appeals from judgments, rulings and orders" of the trial courts "unless otherwise provided by law"). In exercising jurisdiction, we do not, as an appellate court, proceed de novo although the exact standard of review may vary depending upon the nature of the ruling being appealed from. See, e.g., *Boston Edison Co.* v. *Boston Redevelopment Authority*, 374 Mass. 37, 49, 371 N.E.2d 728, 739

---

[1] The defendant has argued that V.R.A.P. 5(b)(1) is invalid insofar as it allows this Court to grant an interlocutory appeal by the State in a misdemeanor action because the governing statute, 13 V.S.A. § 7403(a), as amended by Acts of 1981 (Adj. Sess.) No. 223, § 13, does not authorize such review. We do not reach that question in view of our disposition of the case. Cf. *State* v. *Corliss*, 145 Vt. 169, 484 A.2d 924 (1984) (rule and statute interpreted as consistent to avoid conflict).

(1977) ("proper approach in considering the appropriate scope of review is to evaluate the nature of the action sought to be reviewed."); *In re Cieminski*, 270 N.W.2d 321, 325 (N.D. 1978) ("In determining the scope of review, consideration must be given to the particular responsibility and function of the reviewing authority over the basic subject matter, as well as the function and authority of the body whose action is reviewed.").

We are persuaded that the standard of review should be narrow. Our rule is based upon the federal interlocutory appeal statute, 28 U.S.C. § 1292(b). See *In re Pyramid Co.*, 141 Vt. 294, 301, 449 A.2d 915, 919 (1982); Reporter's Notes to V.R.A.P. 5(b). The federal statute does not allow an appeal or extraordinary review of the trial court's decision to refuse permission to appeal. See *Arthur Young & Co.* v. *United States Dist. Court*, 549 F.2d 686, 698 (9th Cir.), *cert. denied*, 434 U.S. 829 (1977). The decision to place unreviewable discretion in the trial court to deny any appeal was intentional:

> The district court's familiarity with the record and the original order permits it to screen applications for appeal with little additional effort and puts it in the best position to determine whether an appeal will further the goal of efficiency. By contrast, since very few petitions for leave to appeal will show on their face whether an appeal is frivolous, appellate screening would frequently require the appellate court to become so familiar with the merits of the case while reviewing the jurisdictional question that little would be achieved by denying review. Therefore any effective restriction on the right to appeal will require that the certification of the trial judge be jealously guarded and that de novo consideration of an order by the court of appeals be restricted.

Note, *Interlocutory Appeals in the Federal Courts under 28 U.S.C. § 1292(b)*, 88 Harv. L. Rev. 607, 614 (1975) (citing hearing testimony before the Congressional committees that considered 28 U.S.C. § 1292(b)). However, the federal statute allows the appeals court to deny an interlocutory appeal even after the trial court has granted permission. In part, this is because interlocutory appeals should "be used only in exceptional cases." Report of the Committee on Appeals From Interlocutory Orders of the District Court, Agenda No. 11 (Sep. 23, 1953), reprinted in 1958 U.S. Code Cong. & Admin. News 5255, 5260 (85th Cong., 2d Sess.) (the

report of this committee served as the basis for the drafting and enacting of the interlocutory appeal statute). The Court of Appeals can deny the appeal for any reason, including docket congestion. See *Coopers & Lybrand* v. *Livesay*, 437 U.S. 463, 475 (1978).

In light of this history, we hold that the discretion to refuse permission for an interlocutory appeal is one committed to the direction of the trial court. The test in reviewing this decision "is whether there has been an abuse of discretion, or a failure to exercise discretion." *Ohland* v. *Ohland*, 141 Vt. 34, 39, 442 A.2d 1306, 1309 (1982) (citations omitted). We will not reverse simply because we would have reached a different conclusion had we been the trial court. See *id.*

The trial court's determination in this case is well reasoned and clearly falls within its discretion based on its evaluation of the likelihood that the interlocutory appeal will prolong the termination of the case. The court has not abused its discretion or failed to exercise it. We would end our analysis here, but in view of the fact that we are now reversing our determination on whether to allow an interlocutory appeal, we are detailing below why we believe the trial court opinion is correct.

We agree with the trial court that, even assuming a substantial ground for difference of opinion exists as to the trial court's order, it does not involve a "controlling question of law" within the meaning of V.R.A.P. 5(b)(1). This Court stated in *In re Pyramid Co.*, 141 Vt. at 304, 449 A.2d at 920, that: "A question of law is one capable of accurate resolution by an appellate court without the benefit of a factual record. If factual distinctions could control the legal result, the issue is not an appropriate subject for interlocutory appeal." (Citations omitted). Recently, in *State* v. *City of Winooski*, 147 Vt. 649, 650, 520 A.2d 998, 999 (1986) (mem.), we reiterated the *Pyramid* rule by stating that: "Only those questions should be certified up before judgment which bring with them a framework sufficient to allow this Court to issue a decision which will be pertinent and inevitable in the disposition of the case below."

Here, the questions of law asserted by the State to be controlling are very broad.[2] Many may not be material to the disposition of the case. The legal result is entirely dependent on the defend-

---

[2] Among the questions of law for review are:

ant's ability to prove at trial facts which he has at this point merely *offered* to prove. If his offer of proof at trial is unsuccessful, the trial court's ruling could change. Further the trial court has made only a partial admissibility ruling, leaving relevancy and V.R.E. 403 issues to be resolved during the trial. As in *Pyramid*, the resolution of the issue the State seeks to appeal "may be dictated by the facts that are developed at trial," *Pyramid*, 141 Vt. at 304, 449 A.2d at 920, making the order inappropriate for interlocutory review. If anything, this case is far less ripe than *Pyramid* was.

As we stated in *Pyramid*, "[t]he propriety of an interlocutory appeal [under V.R.A.P. 5] cannot be gauged by an instinctive evaluation of a case's 'exceptional' nature." *Id.* at 301, 449 A.2d at 919. While this case may involve important questions of first impression in this jurisdiction, we cannot and should not deviate from the settled limits of the interlocutory appeal. Indeed, the importance of the questions makes it more imperative that full factual development underlie our review.

In looking at this question, we have also consulted the interpretations of 28 U.S.C. § 1292(b), the federal interlocutory appeal statute. The federal courts have similarly been unwilling to grant permission for an interlocutory appeal where the application of the ruling to the determination of the case is speculative and the facts are still uncertain. Moore's treatise on federal procedure summarizes the cases as follows: "It is necessary, however, that the order involve a clear-cut question of law against a background of determined and *immutable* facts." 9 Moore's Federal Practice ¶ 110.22[2], at 261 (2d ed. 1987) (emphasis added); see also 16 C. Wright, A. Miller, E. Cooper & E. Gressman, Federal Practice & Procedure § 3930, at 157 (1977).

■ Our holding that interlocutory appeal is inappropriate is not based on the absence of a question of law that *could* be the sub-

---

1. Do the Supremacy and Equal Protection Clauses, Congressional and/or executive actions regarding the United States activity in Central America supersede any conflicting application of international, federal or Vermont law?

. . . .

7. Are the "international law" principles, including the Nuremberg Principles, so-called, applicable to this case?

*Motion of the State of Vermont to Appeal*, at 2. While the opinion granting the motion in limine touches on some of the questions raised, some of the questions were not considered below at all.

ject of appellate review but, instead, on the absence of a question that warrants the exceptional course of interlocutory appeal. An interlocutory appeal will delay this criminal case for many months and possibly for years.[3] The questions presented are so expansive that they are virtually hypothetical. They, in turn, depend upon the defendants being able to prove very broad allegations of illegal actions by the United States government in Central America, tying those actions to the property on which defendants allegedly trespassed, and surviving objections to the evidence based on challenges to relevancy and assertions of prejudice. We share the view of the trial court that the likelihood is that the appeal will delay greatly the termination of the case, while involving the Court in an opinion that will not control the outcome of the case.

It is important to emphasize that this case is in an entirely different procedural posture from the leading case on the necessity defense, *State* v. *Warshow*, 138 Vt. 22, 410 A.2d 1000 (1979). In *Warshow*, review proceeded in this Court after a conviction where defendants were not allowed to present a necessity defense. In this case, we do not know whether defendants will be convicted or acquitted and whether the necessity defense will have any bearing on the outcome. We would not have found a necessity defense based interlocutory appeal attempt in *Warshow* to be acceptable against the discretionary decision of the trial court, any more than we find it acceptable here.

Because the order is within the discretion of the trial court and no abuse of discretion has been shown, permission to appeal was improvidently granted.

---

[3] A review of this Court's opinions indicates that in the last 25 cases decided on interlocutory appeal in this Court, the average time between the notice of appeal and the opinion of the Court was 559 days. Delays of this magnitude make trial difficult because witnesses become unavailable and memories dim. Of course, it is possible to expedite any appeal, including this one. However, consideration of the opportunity to expedite an appeal in determining whether to grant interlocutory appeal is, in fact, a commitment to expedited treatment in such cases to the detriment of other appeals in this Court and in disregard of whether the issues demand a full briefing schedule. Expediting a case reduces delay but does not eliminate it. The largest delay is between argument and decision—an average of 226 days in the last 25 cases.

*Appeal dismissed.*