### In re Judicial Review of C.H.

[559 A.2d 694]

No. 89-016

Present: **Allen, C.J., Peck, Gibson and Dooley, JJ.**

Opinion Filed March 31, 1989

*Shirley Markland* and *Nancy Breiden, Vermont Legal Aid, Inc.*, Rutland, for Petitioner.

*Jeffrey L. Amestoy, Attorney General*, Montpelier, and *Joseph L. Winn, Assistant Attorney General*, Brandon, for Respondent.

**Gibson, J.** C.H. seeks the permission of this Court to take an interlocutory appeal from an adverse pretrial ruling by the Brandon District Court on the following question of law:

Is the Commissioner of [Mental Health] required to present evidence supporting his lack of resources defense for failure to provide community services for C.H., and is C.H.

entitled to discovery of and cross-examination on such evidence?

Because of the distinct possibility that a rigid adherence to the final judgment rule will result in substantial injury to C.H. that could not be repaired on appeal from a final judgment, the motion for permission to take an interlocutory appeal is granted.

C.H. is a resident of the Brandon Training School who is on conditional discharge status and living at a convalescent center in Morrisville. A judicial review proceeding (18 V.S.A. § 8834) was begun in 1980.

In August of 1988, the Commissioner of Mental Health and C.H's counsel entered into a stipulation to settle that proceeding. The Commissioner conceded that C.H.'s placement was inappropriate and that he was not receiving habilitation and treatment appropriate to his needs. The Commissioner agreed to "make all efforts within his power" to find an appropriate community placement for C.H. by October 1, 1988. The settlement provided for the Commissioner to report on progress to the court, and for the judicial review proceedings to be reopened if a satisfactory placement was not achieved. The Commissioner reported to the court that funds were not available for C.H.'s placement, and that there were other individuals who would take priority before C.H.

In the reopened judicial review proceeding, C.H. notified the Commissioner that he intended to subpoena witnesses to testify as to the Commissioner's placement efforts, including the availability of funds, the allocation of available funds, and the Commissioner's efforts to obtain additional funds.

The district court granted the Commissioner's motion in limine to limit evidence to the issues identified in the judicial review statute, 18 V.S.A. § 8834(e), and to exclude evidence on the Department's lack of resources, citing *In re C.B.,* 147 Vt. 378, 518 A.2d 366 (1986), and *In re A.C.,* 144 Vt. 37, 470 A.2d 1191 (1984). In C.B., the Court held that the Commissioner could assert a lack-of-resources defense. 147 Vt. at 384, 518 A.2d at 371. In the case at bar, C.H. argues that the corollary to that holding is that the Commissioner must also present evidence on that defense, and that it should be subject to discovery. After granting the Commissioner's motion, the trial court denied C.H.'s motion to take an interlocutory appeal, stating that it failed to meet the

V.R.A.P. 5 criteria and citing *State* v. *Lafayette,* 148 Vt. 288, 532 A.2d 560 (1987).

The parties agree that the question which petitioner seeks to have resolved involves a controlling question of law upon which there is a substantial ground for a difference of opinion, but disagree about whether the resolution of the question would in any way advance the termination of the litigation. See V.R.A.P. 5(b).

The inability to present evidence on the issue of whether the Commissioner lacks the resources to place C.H. in the least restrictive appropriate placement precludes C.H. from obtaining the evidence necessary to overcome the Commissioner's contention that he lacks the resources to meet those needs. The effect of the grant of the motion in limine is to force C.H. to a hearing from which an appeal will most certainly be taken, raising the identical issue that C.H. now seeks to bring before us.

We cannot agree with the dissent that C.H. will not suffer prejudice by letting the case go to final judgment and then appealing it. A judicial review of the appropriateness of C.H.'s case, treatment, and rehabilitation has been pending since 1980. Should it be ultimately determined that the resources were available, C.H. will have forever lost the care and treatment to which he may be entitled for the period of time caused by our delay in deciding the issue presented. The consequences of the delay cannot be effectively cured by reversal months or years later. Where substantial injury which could not be repaired on appeal from a final judgment may result from rigid adherence to the final judgment rule, the rule ought to be relaxed and interlocutory review granted. See 16 C. Wright, A. Miller, E. Cooper and E. Gressman, Federal Practice and Procedure: Jurisdiction § 3920, at 6 (1977) ("proliferation of opportunities for review prior to completely final disposition in the [federal] district court has occurred because of the substantial injuries that could result from rigid adherence to a strict final judgment rule"); compare *Castle* v. *Sherburne Corp.,* 141 Vt. 157, 164-65, 446 A.2d 350, 353-54 (1982) (because of unusual delays in the discovery process and in order to "best serve the interest of judicial economy," the Court found good cause to suspend the requirments of V.R.A.P. 5(b) pursuant to V.R.A.P. 2 and consider the interlocutory appeal).

The dissent's concern for the added workload inposed upon this Court is not persuasive. The issue will ultimately have to be

decided by this Court, and there will be no resulting increased caseload impact.

*The motion of C.H. for permission to file an interlocutory appeal is granted.*

**Dooley, J.,** dissenting. The majority has reversed the trial court and granted interlocutory appeal to review the granting of a motion in limine and the denial of a discovery order. This case does not meet the standards for an interlocutory appeal specified in V.R.A.P. 5(b)(1). The interlocutory review decision is committed to the discretion of the trial court, reviewable here only for abuse of discretion. See *State* v. *McCann,* 149 Vt. 147, 151, 541 A.2d 75, 77 (1987). No attempt has been made to demonstrate how the trial court discretion was abused here. Indeed, it would be very difficult to find abuse of discretion in this case since we have ruled that discovery orders are not ordinarily subject to interlocutory review, *Ley* v. *Dall,* 150 Vt. 383, 384, 553 A.2d 562, 562-63·(1988); *Castle* v. *Sherburne Corp.,* 141 Vt. 157, 164, 446 A.2d 350, 353 (1982), and we have recently dismissed an appeal involving a motion in limine, finding that interlocutory appeal had improperly been allowed. *State* v. *Dubois,* 150 Vt. 600, 602, 556 A.2d 86, 87 (1988) (discretionary denial of a motion in limine is inappropriate for an interlocutory appeal). Moreover, it is hard to see how the appellant will suffer any prejudice in this case by letting it go to final judgment and appealing at that time.[1]

It is increasingly apparent that the caseload pressures and delays in this Court are a self-inflicted disease. More and more cases appear on our calendars through scheduling orders intended to force real-time responses from an institution increasingly incapable of responding within even a reasonable time. The scheduling orders often do not work because the real delay is between argument and decision. See *State* v. *McCann,* 149 Vt. at 153 n.3, 541 A.2d at 78 n.3 (average of 266 days between argument and deci-

---

[1] My difference with the majority is underscored by its treatment of this issue. If in fact the trial court ruling is fatal to the appellant's case, then the issuance of a final judgment is only a formality and appellant can appeal after that formality. If, on the other hand, the final judgment is not a formality then it is possible that intervening events—like a settlement, a change of placement, an alternative theory for relief—will obviate the need for an appeal. Despite the majority's finding on this point, there is nothing in the record to support either alternative. What is certain is that an interlocutory appeal will require action and an opinion of this Court in a case that might *never* otherwise get here.

sion in previous 25 cases). Meanwhile, the final judgment docket falls further behind, encouraging lawyers to file interlocutory appeals to get our attention.

Failure to comply strictly with the interlocutory review standards can be a major source of our caseload woes. In every case, one party can claim that if this Court reviews an interlocutory order *and holds for that party,* our ruling will "materially advance the termination of the litigation." Similarly, in most cases, a party can argue that delay will work against the interest of that party and will be reduced if we grant interlocutory relief *and hold for that party.* Of course, in both circumstances, we will cause extensive delay and throw a roadblock in the way of termination if we hold against the moving party and, in any event, our involvement will itself delay the termination of the case. Thus, I see the majority's acceptance of this kind of argument in this case as a very dangerous precedent[2] that will inspire the trial courts, who make most of the interlocutory appeal decisions, to allow more interlocutory appeals. The danger is compounded by the suggestion that we should use the discretionary authority of V.R.A.P. 2 to reach out and take a case that does not meet interlocutory review standards.[3]

I see little assistance from the federal authorities in this case.[4] There are major differences between the federal interlocutory re-

---

[2] While the immediate precedent is established in a mental health case, I believe its most frequent application will be in criminal cases where a defendant can always claim that he or she should not be put through the trauma and stigma of a criminal trial where the interlocutory review issue might avoid it. Ironically, the federal interlocutory review statute, on which we modeled our interlocutory review rule, applies only in civil cases. See 28 U.S.C. § 1292(b) (Supp. 1986).

[3] The use of V.R.A.P. 2 in *Castle* v. *Sherburne Corp.,* 141 Vt. at 164-65, 446 A.2d at 353-54, was rationalized because the case had been fully briefed and argued to the Court. Thus, we emphasized that "this decision should not be interpreted as a relaxation of the strict requirements that must be satisfied" before an interlocutory appeal is granted. *Id.* at 165, 446 A.2d at 354. The majority uses *Castle* precisely for the interpretation that we denied in that opinion. Further, the majority is using V.R.A.P. 2 to create jurisdiction where there is none, a use that is beyond our power.

[4] The majority draws on federal precedents through its citation to the Wright & Miller treatise. More relevant are the decisions of the federal courts denying interlocutory appeals from pretrial and discovery orders except in special cases with circumstances not present here. See generally *Federal Civil Appellate Jurisdiction: An Interlocutory Restatement,* Law & Contemp. Probs., at 13, 219-25, 235-37 (1984).

view scheme and the scheme we have adopted in V.R.A.P. 5(b). The federal statute, 28 U.S.C. § 1292(b), does not allow the appeals court to review a denial of interlocutory review by the trial court. *State* v. *McCann,* 149 Vt. at 150, 541 A.2d at 76. Further, the federal appeals court may in its discretion refuse to hear an interlocutory appeal granted by the trial court. See *id.* at 150, 541 A.2d at 77; *Coopers & Lybrand* v. *Livesay,* 437 U.S. 463, 475 (1978) ("appellate court may deny the appeal for any reason, including docket congestion"). For whatever reason, we have chosen to use the discretion provided under 12 V.S.A. § 2386(a) to create rights to interlocutory review on meeting the federal standards rather than following the federal system by making lower court denials unreviewable and retaining authority to decline to accept appeals that technically meet the standards.[5] As long as we deprive ourselves of the tools needed to prevent interlocutory appeals from becoming the norm rather than the exception, we must scrutinize every case to ensure it fully meets the narrow authorization of the interlocutory appeal rule. See *Gardner* v. *Westinghouse Broadcasting Co.,* 437 U.S. 478, 480 (1978). Unfortunately, the majority has chosen not to do so in this case. Accordingly, I must respectfully dissent.

---

[5] I believe that our decision to accept the federal standards without the federal procedures was a mistake and we should amend V.R.A.P. 5(b) to adopt the federal procedures and should reconsider the requirements of interlocutory appeals in criminal cases. The latter change is important because the federal standards were not drafted to apply in criminal cases and, in my view, do not fit most interlocutory appeals in criminal cases. That misfit will, I believe, be exacerbated by today's decision.