In re Town Highway #20, No. S173-97 Fc (Joseph, J., Jan. 14, 2010)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT                                  SUPERIOR COURT
FRANKLIN COUNTY


IN RE TOWN HIGHWAY # 20                           DOCKET NO. S 173-97 Fc
PETITIONER:   JOHN RHODES

        and

JOHN RHODES,                                      DOCKET NO. S 55-06 Fc
            Plaintiff
        v.

TOWN OF GEORGIA,
            Defendant


**OPINION AND ORDER**

*Introduction*

   This Opinion and Order concerns two separate cases filed by the Plaintiff, Mr. John Rhodes. Because they involve the same parties and similar issues, they have been consolidated for consideration at the same time. The first case concerns the Town's refusal to give the plaintiff permission to improve Town Highway #20 in the Town of Georgia, Vermont. This Court issued a decision in that case on June 26, 2002 ordering the Town to give Mr. Rhodes permission to improve TH #20. In that decision, the Court found, inter alia, that the defendant Town had violated both the federal and state constitutions when it denied the plaintiff's application for permission to improve TH #20.

   The second case was filed on February 2, 2006. The Complaint in that case raised two principle issues. First, it concerns enforcement of the Court's June 26, 2002 Order that directed the Town to give the plaintiff permission to make improvements to TH #20. This second Complaint also includes plaintiff's contention that the Town violated the Common Benefits Clause of the Vermont Constitution when it classified another Highway (the unnamed road) as

1

a legal trail. Due to the lengthy and complicated procedural history of these two overlapping cases, the Court finds that a detailed summary of their history is necessary.

*Factual Overview and Procedural History*

The Plaintiff owns a large farm in the Town of Georgia, Vermont. See the map attached to this Opinion and Order marked as Court Exhibit #1 which shows the locations of some of the Rhodes property, some of the adjoining Bechard property, Town Highway #20 which runs along the southeastern boundary of the Rhodes farm, and a second road (the "unnamed road") that runs along the southwestern boundary of the Rhodes property. A long section of Town Highway #20 ("TH #20") runs along the southeastern border of the Rhodes farm. That section of the Highway is about 600 feet long. The property on the other side of that section of TH #20 is part of a 348 acre farm that is owned by Gregory and Janet Bechard. A second road, which runs along the southwestern border of the Rhodes property, has been referred to by the parties as either "the pent road" or "the unnamed road" or "the Georgia Crossing Road." To avoid confusion, the Court will refer to this road as the "unnamed road". The unnamed road intersects with TH #20 and the Bradley Hill Road in the vicinity of the Bechards' farm house. See Court Exhibit 1, a map that includes a diagram of the corner of the Rhodes property where the three roads intersect.

In l971, the Town made an agreement with Mr. Rhodes' father to install a large culvert under the unnamed road near its intersection with the Bradley Hill Road. The culvert made it possible for both Mr. Rhodes and the Bechards to have vehicle access to land they own which is located to the west of the intersection. The Town installed the culvert in order to have vehicle access to a gravel pit owned by the Bechards that could only be reached by using the unnamed road. The Plaintiff inherited the Rhodes farm from his father in l973 and he used the unnamed road from l973 to l994 to transport equipment that he needed to maintain salt licks for his heifers and to repair his farm fences. The location of the Bechards' gravel pit is shown on Court's Exhibit 1.

In l994, Germaine Bechard, Gregory Bechard's father, asked that the culvert be removed. No justification for the removal has been offered by the Town. The culvert was removed by the order of Stephen Bechard, Gregory's brother, who was Chairman of the Town of Georgia SelectBoard at the time. See this Court's 6/26/02 decision at Findings of Fact 20,21,22,32 and 33. The removal of the culvert prevented Mr. Rhodes from using cars and trucks on the

2

unnamed road.

In l995, Mr. Rhodes filed an application with the Town of Georgia Select Board asking for permission to upgrade TH #20 in order to gain year-round vehicle access to his farm. As part of that application, Mr. Rhodes asked that the Town direct his neighbors, the Bechards, to remove a large hay baler and some other farm equipment that was in the TH #20 right of way.

On April 14, 1997, the Select Board denied Mr. Rhodes' requests. The Board found that TH #20 was a trail, not a public highway. In support of that denial, the Select Board stated:

> "The travel portion of the road is very close to Mr. Bechard's house. Upgrading the traveled portion of the road in its current location and more intensive use of said road may pose a detriment to his privacy and enjoyment of property."

See Ex. 3, page 2, paragraph 3. In addition, the Select Board found that the Bechards' hay baler and the other farm machinery could stay in the TH #20 right of way because it "does not present a problem." See Plaintiff's Ex. #3, page 2, paragraph 4.

Mr. Rhodes appealed from the Select Board decision to the Franklin County Superior Court. After a hearing, the Superior Court made detailed findings of fact and conclusions of law. See this Court's twenty-four page 6/26/02 decision which is marked as Plaintiff's Exhibit #4. The Superior Court found that TH #20 was a public highway, not a trail, and ordered:

> 4. The Town of Georgia Select Board is directed to give the Petitioner permission to improve and maintain the Town Highway #20 right-of-way at his own expense under the same terms and conditions given to other owners of property abutting TH #20 and Class 4 highways in the Town.
>
> 5. The Town of Georgia Select Board is directed to order that the Intervenors (the Bechards) remove all of their personal property from the TH #20 right-of-way, including, but not limited to, stacks of wood, farm equipment and the hay baler.

The Defendants, the Town of Georgia and the Bechards (who had intervened in the case), appealed this Court's June 26, 2002 Order to the Supreme Court of Vermont. In a decision dated July 23, 2003, the Supreme Court wrote the following:

> In its brief, the Town explicitly states that is does not join the Intervenors' claims on appeal. The Town's sole contention is that it did not unconstitutionally discriminate against Petitioner, as the trial Court found. Once we affirm the trial Court's decision that the disputed portion of TH#20 is a highway, however, *the Town asserts its willingness to comply with this Court's decision and fully accept the trial Court's order*, *including*

3

> *allowing Petitioner to improve and maintain TH #20, and ordering*
> *Intervenors to remove all of their personal property from the TH #20 right of*
> *way*. Because we uphold the trial Court's classification of TH #20 as a highway,
> and the Town is willing to abide by the superior Court's order, we do not reach
> the constitutional issue.

*In re Town Highway No. 20 of the Town of Georgia,* 175 Vt. 626, 630 (2003) (emphasis added).

Subsequent to the denial of a request for reargument before the Supreme Court on September 19, 2003, the Town has not given the Plaintiff permission to improve TH #20 even though it told the Supreme Court that it would do so. In addition, the Town did nothing to force the removal of the equipment from the TH #20 right-of-way for several years.

On March 10, 2005, Mr. Rhodes filed a civil rights Complaint in the Vermont Federal District Court based on his contention that the Town had violated his civil rights by denying him permission to improve TH #20 under the same terms that the Town had given to other property owners who own land along TH #20. While that federal case was pending, the Plaintiff and the Town were required to engage in mediation. In an effort to settle the case, the Plaintiff agreed to make another application to the Town for permission to improve TH #20.

On January 9, 2006, the Town classified TH #20 as a Class 4 highway.

On February 2, 2006, Mr. Rhodes filed another Complaint in the Franklin Superior Court (Docket No. S 55-06). This Complaint was filed while the Plaintiff's civil rights Complaint was pending in the Vermont Federal Court. In his 2006 Complaint, Docket # S 55-06 Fc, the Plaintiff claimed that the Town and its officials had violated his civil rights by systematically frustrating his attempts to develop his land. The Plaintiff claimed that the Town's refusal to let him make improvements to TH #20 was part of a pattern of illegal conduct. This Complaint also involved the Plaintiff's claim that the Town had discriminated against him and in favor of the Bechards when it decided to reclassify the unnamed road as a trail in order to deny him vehicle access to his land. This second Superior Court case is sometimes referred to as the "unnamed road" case in this Opinion and Order.

On June 8, 2006, this Court *denied* the Town's Motion to Dismiss the Complaint in the unnamed road case. However, in his decision, Judge Crawford noted that he agreed with the Select Board contentions that the Superior Court had the power to reclassify the unnamed road as a trail and that the Board had followed proper procedure in making its reclassification

4

decision. Judge Crawford denied the Motion to Dismiss so that the Plaintiff could have an evidentiary hearing with regard to the substance of his claims. See the attached Court's Exhibit #2, a copy of Judge Crawford's June 8, 2006 Decision.

On March 23, 2007, the Federal District Court for Vermont dismissed the Plaintiff's 2005 civil rights Complaint on *res judicata* grounds. In effect, it found that the Franklin County Superior Court had already ruled in favor of the Plaintiff on his constitutional claims. Judge Murtha of the Vermont Federal District Court dismissed the Plaintiff's federal constitutional claims and sent the case back to this Court saying that the "appropriate path" for the Plaintiff would be to seek post-judgment relief in the state courts where issues of access and damages could be addressed.

In August of 2007, the Town adopted a new set of regulations for the use and improvement of Town Highways (hereinafter referred to as the "Road Policy"). See Plaintiff's Exhibit 17, a copy of the August 2007 Road Policy. The Exhibit also includes a Policy Statement adopted by the Town in July of 2008.

On September 19, 2007, the Plaintiff filed a Motion asking that this Court enforce the June 26, 2002 Order that directed the Town to grant him permission to make improvements in TH #20. The plaintiff also asked that the Court award him damages because of the Town's failure to follow the Court's Order.

On October 19, 2007, the Plaintiff filed a second amended Complaint in case # S 55-06 (the unnamed road case). At the Town's request, case #S55-06, was removed to the Vermont Federal District Court on November 7, 2007.

In December of 2007, the Town asked Mr. Rhodes if he was going to apply for permission to improve TH #20 pursuant to the parties' federal mediation agreement. In August of 2008, Mr. Rhodes filed a second application for permission to improve TH #20. On September 22, 2008, the Town denied the Plaintiff's second application.

On February 2, 2009, the Federal District Court remanded S #55-06 back to this Court. In that decision, Judge Murtha granted the Town's Motion for Summary Judgment on the Plaintiff's federal civil rights claim and remanded the case to this Court for determination of the state law issues stating: "The Court will not retain jurisdiction over the remaining state law issues because factual issues remain regarding access and damages that the state Court should address." See Judge Murtha's decision in the case of John Rhodes v. Town of Georgia, U.S.

5

District Court for Vermont, File No. 1:07-CV-230 at page 9. The decision is dated November 25, 2008 but was filed on January 27, 2009.

On May 18 & 19, 2009, a hearing was held for the Plaintiff's Motion to Enforce and for Damages in case # S 173-97 Fc. At the same time, the Court took testimony in the trial phase of the unnamed road case, # S 55-06 Fc. On July 31, 2009, the Plaintiff and the Town filed proposed Findings of Fact and Conclusions of Law with the Court.

## FINDINGS OF FACT

### *In re Town Highway #20, Docket No. S 173-97 Fc*

1. In its 2002 decision, this Court found that the Georgia Town SelectBoard had denied Mr. Rhodes the right to make improvements to TH #20 in order to stop the development of Mr. Rhodes' property for residential use. This Court found that the Town had acted in an unlawful manner that violated both the federal and state constitutions because it had discriminated against the Plaintiff in order to protect the property rights of his neighbors, the Bechards. See Plaintiff's Exhibit #4, a copy of this Court's 6/26/02 opinion at page 21.

2. This Court's June 26, 2002 Order required the Town to give Mr. Rhodes the necessary permission to make improvements to TH #20. This permission was to be consistent with approvals that had been granted to other property owners along TH #20. (The approvals granted to other property owners are described in the June 26, 2002 Opinion at pages 21 and 22. Those approvals included the approval of a request to improve another portion of TH #20 for the purpose of creating a sub-division.)

3. The Town had already granted permission to make road improvements to other property owners located on the TH #20 right of way without any evidence of specific plans or designs for those improvements. The only requirement imposed by the Town was that the landowners agree to pay for the cost of the improvements. Trial Transcript of the enforcement hearing on 5/19/09 at pp.64-66.

4. Mr. Kurt Waite, the current Georgia Select Board chair, was the chair of the Select Board in 1997 when the Board denied Mr. Rhodes' original request for permission to improve TH #20. He was still serving as chairman of the Select Board when he testified during the hearing that began on May 18, 2009. T 5/18/09 pp. 192-196.

5.  The Town's position is that, despite this Court's 2002 Order and the Town's promise to the Supreme Court that it would grant Mr. Rhodes' application, Mr. Rhodes had to submit a new application for improving TH #20 before he could be given permission to make those improvements. Obviously, this Court's decision in 2002 came after the Plaintiff made an application to improve TH #20 in l997. This Court's decision reversed the denial of that application and expressly ordered the Select Board to grant permission under the same terms that it had given to other landowners who had property along TH #20. (T. 5/18/09 pp. 223-226).  Mr. Waite, the chairman of the Town Select Board testified during the May 18, 2009 hearing that "there was nothing to give permission for" after the Supreme Court made its decision. That testimony was not credible. T 5/18/09 p. 204.

7.  When this Court made its decision in June, 2002, the only thing that a property owner had to do if he/she wanted to upgrade a Class 4 road in the Town of Georgia was to agree to be responsible for the costs of the upgrade. (See Plaintiff's Exhibit #4, the 6/26/02 decision at pp. 20-21 ).

8. When Mr. Rhodes made his original application, he was considering selling the property after he upgraded TH #20 and improved vehicle access to his land. T. 5/18/09 at page 94. Mr. Rhodes' testimony that he was thinking of selling the property and had no plans to develop it himself was credible. Indeed, all of his testimony during the 5/18/09 hearing was credible.

9.  It was not until the summer of 2005 (almost two years after the Supreme Court's decision became final ) that the Town retained the services of Krebs & Lansing, an engineering firm, to locate and monument the right of way for TH #20. T 5/19/09, pp. 42-43.

10.  On July 16, 2007, Mr. Rhodes, through his attorney, submitted a construction estimate to the Town's attorney for improvements to TH #20. The estimate was prepared by a contractor, Jeffrey Nielsen. (See Plaintiff's Ex. 2); T. 5/18/09 pp. 115-120.

14.  On December 13, 2007, the Town's attorneys conducted an extensive deposition of Mr. Nielsen which dealt with the details contained in his construction estimate.  T. 5/18/09 pp. 124-125.  Mr. Nielsen had prepared his estimates based on standards for road improvement that were given to him by the Town. However, at no time has the Town granted permission for Mr. Rhodes to proceed with the improvements described in Mr. Nielsen's estimate, nor has the Town requested any additional details or specific plans from Mr. Rhodes with respect to

7

Mr. Nielsen's estimates.

16. As a result of the Federal Court mediation process, the parties agreed that Mr. Rhodes would submit detailed drawings, consistent with the roadway upgrade standards adopted by the Town of Georgia in August of 2007 (See Plaintiff's Exhibit 17). T 5/18/09 p. 229.

17. Pursuant to the parties' mediation agreement, Mr. Rhodes retained an engineering firm to prepare plans for the upgrade of Town Highway 20. These plans were drawn up by Rick Hamlin of Hamlin Consulting Engineers and are shown as Ex. 20A and 20B and 21 through 27. T 5/18/09 p. 130-133.

18. Mr. Rhodes paid Mr. Hamlin $4,907.96 for his design services. T 5/18/09 p. 63.

19. In preparing his plans, Mr. Hamlin obtained a copy of the August 20, 2007 Town of Georgia Policy for Roads and he drafted a plan which met all the requirements of the Town of Georgia Road Policy. (See T. 5/18/09 pp. 132, 138-139, 145-146, 174-177)

20. Mr. Hamlin's plans maximized the width of the improvement plan within the limits of the Town's Road Policy. The plans took into consideration the length of the TH #20 right of way, the amount of road that could be completed by other property owners in the future, the amount of land mass served, the fact that other property owners had frontage along the Town Highway 20 right of way, and the time and expense involved in making the improvements. This plan called for a roadway with a traveled width of twenty-two feet, with one foot road shoulders on each side for a total improvement width of twenty four feet, with no work beyond the 3 rod limits of TH #20. The plan would not infringe on the land of any other property owner. Only Mr. Rhodes' property might be affected. T 5/18/09, pp. 139-140, 145, 153.

21. Mr. Hamlin's plans provided for no blasting that could pose a threat to any adjacent property. Even though the plans were designed in accordance with the standards of the Town's Road Policy for the improvement of Class 4 roads, the Town's Select Board denied Mr. Rhodes request to proceed with the improvements. T. 5/18/09 pp. 145-147, 155-157.

22. The Select Board's decision to reject the Hamlin plans was made in bad faith. The application was denied in order to protect the property rights of the Bechards.

23. The Town suggested that Mr. Rhodes present an alternative plan, even though the Town's own policy states that a deviation from the road standards may only occur when the

8

construction within the standards is physically impossible. That was not the case here. The construction proposed by the Hamlin plans was within the Road Policy standards. T 5/18/09, pp. 176-177.

24. The Town suggested that Mr. Rhodes present an alternative improvement plan in line with the Town driveway standards. However, the Town could not confirm that driveway standards had been adopted by its Select Board at the time of the proceeding before the Select Board. T. 5/19/09 pp.76-77. The TH #20 right of way does not meet the definition of driveway as set forth in the Town's own zoning standards. T 5/19/09 pp. 75, 87-88. The Town's standards for the upgrade of Class 4 roads do not give the Select Board the authority to approve a plan for improvements to a Class 4 road by imposing driveway standards. T 5/19/09 p. 87-90.

25. This Court's June 26, 2002, Order expressly required that the Town give Mr. Rhodes permission to make improvements; it did not require that he make a second application asking for permission. Nonetheless, Mr. Rhodes sought such permission on two separate occasions. The first time, Mr. Nielsen's estimates were submitted but the Town did not respond. The second time, Mr. Hamlin's plans were presented and the Town denied the proposal saying that Mr. Rhodes had not included any specific plans for development of the 200 acres above the rock ledges that divide his farm. There is no law or regulation which requires a property owner to submit any such plans before he can obtain permission to make improvements to a Town Highway. T 5/18/09 p. 234.

26. Not only did the Town deny the requested upgrade, but it suggested an alternative plan. The Town Administrator has acknowledged that there is no provision for such an alternative proposal in the Town upgrade policy. T 5/19/09 at pp. 87-90.

27. The Town's latest decision is simply a continuation of the Town's determined attempt to prevent Mr. Rhodes from improving access to his land in order to protect the value of the Bechards' property.

28. This Court's June 26, 2002 Order included a requirement that the Town order the Bechards to remove all of their personal property from the right of way for TH #20.

29. From October 20, 2003 (when the Town's attorney sent a letter to the Bechards' lawyer notifying him that the Supreme Court had affirmed this Court's Order requiring the removal of their property) to May 25, 2006, the Town did nothing to force the Bechards to

9

remove their personal property from the TH #20 right-of-way. See Ex. 7 & 9 and
T 5/19/09 p. 36, 46-48.

30. Not only did the Town take no steps during this period to have the Bechards remove their personal property from the right of way, but the Town was clearly aware, through a variety of documented and physical examinations of the property, that the Bechards' personal property was still in the TH #20 right-of-way. See Plaintiff's Exhibit 6, a copy of the Complaint served on the Town on February 8th of 2005.

31. On November 11, 2005, the Select Board conducted a site visit in connection with the classification of Town Highway 20 and the final determination of its right of way.

32. Carrie Johnson, the Town Administrator for the Town of Georgia, stated that she was present during the site visit and that she saw a lot of personal property in the TH #20 right-of-way. T. 5/19/09 at pages 34-40. Despite that information, the Town did nothing about getting the equipment removed until its attorney sent out the April 17, 2006 letter. Plaintiff's Exhibit #8.

33. It was only due to the continued requests from Mr. Rhodes that the Town finally in April and May of 2006 took steps to have the Bechards remove their personal property from the right of way of TH #20. See Plaintiff's Exhibits 8, 9, 10, and 11. This removal occurred more than two years after the Supreme Court's decision became final.

*The "unnamed road" case Docket No. S 55-06 Fc*

34. The "unnamed road" decisions by the Town Select Board demonstrate a clear and continuing effort by the Select Board to show a preference for one property owner, the Bechards, over another property owner, Mr. Rhodes. The identification and the existence of the unnamed road were determined by this Court in its 2002 decision in Docket No. S 173-97 Fc, but the Court did not determine its size and location for all purposes. See Plaintiff's Exhibit 4, the Court's 6/26/02 decision, at pp. 17-18.

35. This Court has previously found that Mr. Rhodes had vehicle access to his property over the "unnamed road" in the period from l973 to 1994. See the 6/26/02 decision at page 9. Access was possible because, in 1971, the Town installed a large culvert under the unnamed road near its intersection with the Bradley Hill road so that the Town could have vehicle access to the Bechards' gravel pit. That culvert made it possible for cars and trucks to use the

10

unnamed road. In l994, the Town removed the culvert at the request of Germaine Bechard, the father of one of the Intervenors in this case, Gregory Bechard. With the removal of the culvert, vehicle access ended. The culvert was removed according to an order issued by Town of Georgia Select Board Chairman Stephen Bechard, Gregory's brother. T. 5/18/09 at page 51. It was the removal of the culvert that had prompted Mr. Rhodes to apply for permission to upgrade TH #20. T. 5/18/09 at page 46.

36. Also in l994, Germain Bechard was planning a subdivision of the Bechard farm. See plaintiff's Exhibit 4, this Court's 6/26/02 decision at page 9.

37. In l995, Germain Bechard hired a surveyor for the specific purpose of determining whether TH #20 was a highway or a trail. *Id*. at page 9.

38. After the Court issued its June 26, 2002 decision, Mr. Rhodes filed a petition with the Select Board requesting that it agree that the unnamed road was a Town Highway. This request was based on the information that had been uncovered in the preparation and presentation of the TH #20 case Docket Number S 173-97 Fc. The Town denied Mr. Rhodes' request and classified the unnamed road as a trail, not a highway. See Plaintiff's Exhibit # 39. The effect of that decision was that the unnamed road could not be used by motor vehicles because, under the provisions of a local ordinance, cars and trucks cannot be used on a trail.

39. During the hearings on May 18th and l9th 2009, Select Board Chairman Waite testified that the Select Board did not consider the effect of its decision on Mr. Rhodes when it reclassified the unnamed road as a trail. That testimony was not credible. T. 5/18/09 p. 221. When he was asked if the Select Board considered the fact that its decision concerning the use of the unnamed road might have some impact on the Bechards' property, his answer was "Not that I recall." *Id.* In the context of everything that had happened in this case between l997 and 2009 while Mr. Waite was Chairman of the Select Board and his demeanor when he testified, the Court finds that this testimony was not credible.

40. After his petition regarding the classification of the unnamed road was denied by the Select Board, Mr. Rhodes appealed to this Court.

41. That appeal was first considered when this Court issued its decision in Dockets S 312-01 Fc and S 381-01 Fc, dated February 13, 2004 (Plaintiff's Exhibit 12). In that decision, Judge VanBenthuysen concluded that the unnamed road was a Town Highway, stating:

11

> Based on the evidence adduced at the hearing in this matter the Court concludes that the unnamed road …is a Town or public highway. The Court remands the matter to the Select Board of the Town of Georgia, Vermont for further classification proceedings not inconsistent with this decision and Order.

The Court's decision identified the layout and length of the unnamed road as it extended from its intersection with the rights of way for TH #20 and the Bradley Hill Road. Judge Van Benthuysen found that the unnamed road was a Town Highway but that the Select Board had the power to either abandon or reclassify the road. Following this decision, Judge Van Benthuysen remanded the case back to the Select Board "for further classification proceedings not inconsistent with this decision and order." See pages 6&7 of Judge VanBenthuysen's February 13, 2004 decision.

42. After the case was remanded, the Town classified the unnamed road as a trail, thereby preventing its use by motor vehicles. As a result, the Town eliminated about 2500 feet of town road frontage along the southwest side of Mr. Rhodes's property. T 5/18/09 pp. 207-208.

43. By classifying the unnamed road as a "trail" the Town made Mr. Rhodes's motor vehicle access to his property much more difficult. During certain times of year, he has no access at all. T 5/18/09 p. 93.

44. The effect of that classification was to deny Mr. Rhodes access to his property by motor vehicle over the unnamed road. This is another example of the Select Board's discrimination against Mr. Rhodes and its preference for the Bechards' property interests.

45. In its decision regarding the classification of the unnamed road, the Select Board concluded that a portion of the unnamed road crossed property of the Bechards. However, there was no proof of that in the survey performed by the Town's own surveyor, Krebs & Lansing. No evidence that the road crossed the Bechards' property was presented during the public meetings in which the Select Board considered the reclassification. Plaintiffs' Exhibits 34-39; T. 5/18/09 pp. 210-217.

46. In the second Amended Complaint for case # S 55-06, Mr. Rhodes claims, among other things, that he has been prevented from using vehicles on the "unnamed road" that runs along the southwestern border of his property because the Town has classified it as a trail, not a road. He claims that this decision was made in violation of his rights under Article 7 of the

Vermont Constitution, (the Common Benefits clause). Under a local ordinance, cars and trucks can be used on a Class 4 highway, but not on a trail.

47. In a pre-trial ruling made on the Town's Motion to Dismiss the Plaintiff's Complaint in case # S 55-06, Judge Crawford **denied** the Town's Motion to Dismiss the Complaint. In his written decision, he ruled in the Town's favor with regard to two of the Select Board's arguments. Contrary to the Plaintiff's positions, he found that the Select Board had the legal power to classify the unnamed road as a trail and that the Town had not violated the Plaintiff's right to procedural due process when it made its decision. See the attached Court Exhibit #2, a copy of Judge Crawford's June 8, 2006 decision.   However, Judge Crawford did not discuss any of the Plaintiff's other claims, such as the plaintiff's claim that the reclassification had been done in violation of his rights under the Common Benefits Clause of the Vermont State Constitution. Furthermore, the Plaintiff's Amended Complaint was not before him when he made his decision denying the Town's Motion to Dismiss.

48. As a result of the classification of the unnamed road as a trail, Mr. Rhodes has been deprived of vehicle access to his property along more than 2,500 feet of road frontage.

49. Classification of the unnamed road as a Class 4 road, instead of a trail, would not have resulted in any more expense or cost to the Town.

50. The Town has argued that Mr. Rhodes has other access to the upper portion of his property.  However, that access is not comparable to the access Mr. Rhodes would have over the unnamed road or from TH #20.  The alternate route is an access road that is seven or eight times longer than either TH #20 or the unnamed road and the alternate route is not usable for a substantial portion of the year.   T 5/18/09 pp. 106-110.

51. Mark Lareau, a licensed real estate appraiser, testified that the classification of the unnamed road as a trail has resulted in a substantial reduction in the value of one portion of the Rhodes property. Mr. Lareau testified that he prepared two appraisals of the approximately 50 acres west of and adjacent to the unnamed road using the comparable sales approach.  The first appraisal valued the land with the unnamed road as a trail. The second appraisal valued the land as if the unnamed road was classified as a Class 4 highway providing vehicle access to the Rhodes property.  Plaintiff's Exhibits 18-19 and  T.  5/19/09 pp. 11-14.

52. With the unnamed road classified as a trail, the Plaintiff's land cannot reasonably be accessed by motor vehicle and cannot be accessed at all during certain times of the year. As

13

a result, Mr. Lareau first valued these 50 acres as open land.  Based on comparable land sales in the area, he found that the value of this section of the Rhodes property as open land is $70,000.00.  However, if the unnamed road was classified as a Class 4 road, there would be vehicle access and it would be possible to develop the 50 acres. Mr. Lareau testified that this land is zoned for low density residential use and could be sub-divided into 5 acre lots. Using a per lot value of $100,000 for each five acre lot and taking into consideration the approximately $100,000.00 expense needed to make improvements to the unnamed road and the cost of permits for such a development, the total 50 acre parcel would have a net value of $900,000.00. The Court finds that Mr. Lareau's expert opinions about the values of the Rhodes property are credible.

53.  While Mr. Lareau's appraisals were performed in 2006, it is his expert opinion that the values remain representative of values in the current real estate market.

54.  Because of the Town's delay in complying with this Court's original order, the improvements proposed by Mr. Rhodes to TH #20 will now be 50 % more expensive than they would have been if the original application had been approved in 1997.
T 5/18/09 pp. 165-166.

## CONCLUSIONS OF LAW

*Town Highway #20*

The first case before this Court concerns the Plaintiff's Motion to Enforce this Court's June 26,  2002 Order. For the following reasons, the Court agrees that enforcement is warranted.

The record in this case shows that the Town of Georgia Select Board has used the power of government to discriminate against the property rights of John Rhodes for more than 10 years. All of the Town's decisions with regard to Mr. Rhodes' land have all been guided by one motive: to favor the property rights of his neighbors, the Bechards.

Starting in 1994, with the Town's  removal of the culvert from the unnamed road on the west side of the Rhodes property, the Town has continuously attempted to deny Mr. Rhodes motor vehicle access to a large portion of his property.  As a result of that action by the Town, Mr. Rhodes petitioned for permission to make improvements to TH #20 in 1995. The Town denied that request in 1997. The Select Board stated in l997 that it was denying Mr.

14

Rhodes' request to make improvements on TH #20 because an increase in the use of the road would be a detriment to the Bechards "privacy and enjoyment" of their property. In making that decision, the Town did not mention the fact that it had recently destroyed vehicle access over the nearby unnamed road by pulling out a culvert that had been in place for more than 20 years.

Mr. Rhodes' challenged the validity of the Town's actions by petition to this Court. In its June 26, 2002 Order this Court held that the Town had unlawfully denied Mr. Rhodes' application. Based on this finding, the Court ordered the Town to give Mr. Rhodes permission to make improvements to TH #20.

Notwithstanding the unequivocal language of that Order and the Town's promise to the Supreme Court of Vermont that it would give Mr. Rhodes permission to improve TH #20, the Town has not done so for more than seven years. The Town has presented no evidence that, as of 1997, it required property owners who asked for permission to make improvements to Class 4 roads to do anything other than to sign an agreement that made them responsible for the cost for those improvements. Nevertheless the Town now takes the position that it does not have to comply with the Court's 2002 Order because Mr. Rhodes has never submitted detailed plans telling it how he wants to develop his land. There is simply no basis in law for the Town's position.

Moreover, Mr. Rhodes has consistently maintained that he does not have plans to develop his property at this time. He simply wants permission to improve TH #20 and create better access. At the time the application was made, he was considering selling the land once the road was improved and there was year-round vehicle access. See T. 5/18/09 at page 94. Obviously an improved TH #20 would make the land much more valuable because its owner could then sub-divide some portion of it for residential use. The 200 acres of the Rhodes land that abut TH #20 sit on top of rock ledges that face west toward Lake Champlain and the Western horizon. Whatever might be built in this location would have spectacular views over Lake Champlain toward sunsets that Rudyard Kipling once described as the most beautiful in the world. This is obviously very valuable real estate. Its value would be increased if it had good year-round road access.

Even though he did not have to do so, Mr. Rhodes agreed to make an application for permission to improve TH #20 under the new Road Policy that the Town adopted in 2007.

15

Despite the fact that his application complied with the Town's new Road Policy and that Mr. Rhodes spent a considerable amount of money employing an engineer to ensure compliance, the Town rejected his application and suggested that he should apply for permission to install a driveway instead. That rejection was made in bad faith. Since the Town had no legal basis for making this rejection, the Court finds that it is further proof of the Town's continued determination to deny Mr. Rhodes his legal right to improve access to his property in a way that could promote future development.

It is simply unacceptable that the Town Select Board, a governmental organization, has ignored a direct court order for over seven years. Not only did the Supreme Court of Vermont affirm this Court's 2002 findings, but the Supreme Court explicitly accepted the Town's assurance that it would grant the Plaintiff permission to improve TH #20. Moreover, the Court finds that any assertion that the Court's 2002 Order was negated by the parties' federal mediation is without merit. No evidence has been submitted that even suggests that the Plaintiff agreed to no longer seek the benefit of this court's Order following federal mediation. Furthermore, no ruling has been issued by this Court or any other court abrogating the 2002 Order. Therefore, the Court holds that the Defendant has thirty days within which to give Mr. Rhodes permission to improve Town Highway #20. If that permission is not granted within 30 days, the Clerk of this Court will schedule a contempt hearing as soon as possible. At that hearing, the Town will be required to show just cause why it should not be held in contempt and subject to daily fines until it has complied with this Court's order.

When the Plaintiff submitted his application in 1995, the Town had a policy of permitting landowners to upgrade Class 4 highways on the condition that the landowners pay for the improvements. See Transcript of the hearing held before this Court on July 11, 2001 in the TH #20 case at page13. In order to avoid further disputes and litigation, the Court is ordering the Town to give Mr. Rhodes permission to improve TH #20 as described in the plans prepared by Hamlin Engineering. **See In re C.B. 147 Vt. 378, 381 (1986)("…one of the primary functions of equity is to afford complete relief while avoiding multiplicity of litigation. ")**

The town's actions violated Chapter I Article 7 of the Vermont Constitution. Article 7 provides:

That government is, or ought to be, instituted for the common benefit,

16

protections, and security of the people, nation, or community, and not for the particular emolument or advantage of any single person, family or set of persons, who are a part only of that community; and that the community hath an indubitable, unalienable and indefensible right, to reform or alter the government, in such manner as shall be, by that community, judged most conducive to the public weal.  Vt. Const. Ch. I, Article 7.

Recent decisions by the Vermont Supreme Court have held that Article 7 is intended to ensure that there is equal treatment between persons. **Baker v. State, 170 Vt. 194, 211 (1999) ("The concept of equality at the core of the Common Benefits Clause was not the eradication of racial or class distinctions, but rather the elimination of artificial governmental preferments and advantages.") and Smith v. Town of St. Johnsbury, 150 Vt. 351, 359 (1988) (the Common Benefits clause is aimed at equality between persons rather than equality between areas of the state.)** As described in detail above, the Town's actions towards Mr. Rhodes have demonstrated a clear preference for his neighbors. The court finds that such preference and unequal treatment by the Select Board is a violation of the Common Benefits Clause (Article 7) of the Vermont Constitution.

As a Vermont citizen whose state constitutional rights have been violated, Mr. Rhodes is entitled to seek redress for his injury in this Court unless the constitutional provision was not intended to provide a private right of action. In the case of **Shields v. Gerhardt, 163 Vt. 219, 223 (1995)**, the Supreme Court of Vermont held that our courts must use a two prong test for determining whether or not a court can consider a claim for monetary damages based on an alleged violation of the Vermont Constitution.

**First, we must determine whether the constitutional provisions are self-executing, that is, whether they support an action against the state or its agents without implementing legislation. Second, if we find a provision is self-executing, we must determine whether monetary damages are available as a remedy for violation. Id. at 222**

In another relatively recent decision by the Vermont Supreme Court, the Court considered the standards to be used in deciding whether or not a private cause of action can be brought for violation of the Vermont Constitution. First, the Court found that the common law, which provides a remedy for violation of every wrong, provides a remedy for violation of a constitutional right. **Shields v. Gerhardt, 163 Vt. 219, 223 (1995) ("To deprive individuals of a means by which to vindicate their constitutional rights would negate the will of the people in ratifying the constitution, and neither this Court nor the Legislature has the power to do so.")**

In the **Shields** decision, the Court discussed whether or not Articles 1 and 13 of the Vermont constitution are self-executing. To make this determination, the Court adopted the standard articulated by the United States Supreme Court in the case of **Davis v. Burke.**

> **A constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed and protected,… and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law(…) In short, if complete in itself, it executes itself. Shields Id. 224 quoting from Davis v. Burke, 179 U.S. 399, 403 (1900)**

In its **Sheilds** decision, the Supreme Court found that Article 1 was not self-executing because it only dealt with general principles, not a specific rule and that it was really just a "restatement of the general requirement of due process of law." **Id at 223-226** However, the Court found that Article 13 (which guarantees the rights of free speech and freedom of the press) was self-executing because "**It sets forth a single, specific right of the people to make themselves heard, a fundamental characteristic of democratic government." Id. at 227.** In this case the guarantee in Article 7 is not just a statement of general principle. It says that government should not discriminate against one person for the benefit of another person or family. This is a specific rule, more than a provision which lists the right to merely "flesh out philosophical truisms." **Id. at 225.** For these reasons, this Court finds that Article 7 is self-executing.

Finally, the court in **Shields** discussed whether or not a plaintiff can bring an action to recover monetary damages because of a violation of a constitutional right guaranteed by a state constitution.

> **We agree that it may be appropriate to imply a monetary damages remedy to enforce constitutional rights where the Legislature has fashioned no other adequate remedial scheme. Where the Legislature has provided a remedy, although it may not be as effective for the plaintiff as money damages, we will ordinarily defer to the statutory remedy and refuse to supplement it.**
> **Id. at pp. 234-235**

This court is not aware of any "remedial scheme" that has been fashioned by the Legislature to address violations of the constitutional rights guaranteed by Article 7, the Common Benefits clause. For these reasons, this court concludes that the plaintiff has the right

to bring claims seeking monetary damages from the Town of Georgia for violation of his rights under Article 7. **See Mahady, Frank G., "Toward a Theory of State Constitutional Jurisprudence: A Judge's Thoughts", Vermont Law Review, Volume 13, Number 1 Spring l988 pp. 151-152 ( Article 7 is an "anti-privileges provision")**

Finally, the Court finds that the Defendant's claim of immunity under the common law is without merit.  In its 2002 Order this court found that the Town had violated the federal and state constitutions when it refused to grant the plaintiff permission to improve TH #20. For purposes of this Opinion and Order, this Court has only dealt with the plaintiff's claims under Article 7 of the Vermont Constitution. For the following reasons, a municipality that commits such a "constitutional tort" under the provisions of Article 7 is not protected by sovereign immunity in Vermont courts.

In the year 1787, the Vermont Legislature enacted a statute dealing with the adoption of the common law of England. That law reads as follows:

> So much of the common law of England as is applicable to the local situation and circumstances and is not repugnant to the constitution or laws shall be laws in this state and courts shall take notice thereof and govern themselves accordingly.
> Title 1 V.S.A. §271.

The proposition that the common law rule of sovereign immunity prevents a citizen from suing a municipality for a violation of his/her rights under Article 7 of the Vermont Constitution is "repugnant" to this States' Constitution. The plaintiff's claims are not barred by the doctrine of sovereign immunity. **See Owen v. City of Independence, Missouri, 445 U.S. 622,638 (1980) (holding that a municipality has no immunity from claims based on violations of the federal Constitution)**

*Unnamed Road*

Having found that the Court's order concerning TH #20 must be obeyed, the remaining issue in this case which must be addressed is the Plaintiff's claim that the Town's actions concerning the unnamed road violated the Common Benefits Clause of the Vermont State Constitution.  For the following reasons, the Court agrees.

The history of these cases shows that the Town violated the Common Benefits Clause of the Vermont State Constitution when it denied Mr. Rhodes' request for permission to make improvements to TH #20.  The Towns' decision to classify the unnamed road as a trial was also a violation of the Vermont Constitution's Common Benefits Clause.  This finding is

19

supported by substantial evidence. First, there is the fact that Select Board Chairman Steven Bechard  (Gregory Bechard's brother) ordered the removal of the culvert under the unnamed road at the request of Germain Bechard, (Gregory Bechard's father).  No justification for the removal was offered by the Town despite the fact that Plaintiff had used this unnamed road to access his property by motor vehicle for more than twenty years. The only purpose served by the removal was to prevent Mr. Rhodes from using cars and trucks on the unnamed road. That same purpose has been served by the classification of the unnamed road as a trail.

The Town's decision to classify the unnamed road as a trail effectively cut off and divided a portion of Mr. Rhodes's property above the ledges since a Town ordinance prevents motor vehicles from using trails or even crossing trails.  In addition, the Town determined that a portion of the property that the trail crossed over was owned by the Bechards, even though the Select Board was not presented with any admissible evidence that justified such a determination. The Court finds this to be further evidence of the Select Board's preference for the Bechards' interests over any rights or interests of Mr. Rhodes.

The Common Benefits Clause of the Vermont Constitution affords citizens the benefit of a government instituted for the common benefit of the community and not for the particular advantage of "any single person, family, or set of persons…" that is a part of that community. See Vt. Const., Ch. I, Article 7.  In the present case, the Town of Georgia has not acted in a manner beneficial to the common interest of all its citizens, but has repeatedly acted to provide an advantage to one person or family over another.  The Supreme Court of Vermont has held that at its core, the Common Benefits Clause expresses a vision of government that affords every Vermonter its benefit and protection and provides no Vermonter a particular advantage. **Baker v. State Id. at pp. 208-209.**  It follows then that the Town's actions which favored the Bechards' property rights over those of Mr. Rhodes were violations of Article 7 of the Vermont Constitution, the Common Benefits Clause.

When one considers the Town's classification of the unnamed road, two factors stand out.  First, the Town's decision is part of a consistent pattern of discriminatory conduct that has lasted for more than twelve years. Second, this Court's 2002 decision that the Town had violated the State Constitution by discriminating against Mr. Rhodes should have served as a warning not to do such things in the future. Despite this notice, the Town ignored any obligation to comply with that Order and then continued to act in the same discriminatory

20

manner. Certainly Judge Crawford was correct when he observed that the Town had the power to classify the unnamed road as a trail but the Town has never had the right to exercise that power in a discriminatory manner. The Town's decisions represent a complete disregard for Mr. Rhodes' constitutionally protected rights.

With respect to the unnamed road, the Town asserts two arguments regarding access and damages.   First, the Town argues that Mr. Rhodes' has access to his land either via TH # 20 or a "thoroughfare" running from the west side of his property.  Second, with respect to damages, the Town argues it is immune because the Town's actions were governmental functions. The Court disagrees on both points.

The testimony at trial was clear that a portion of Mr. Rhodes'  property, about 50 acres, is west of the unnamed road, and that Mr. Rhodes does not have good vehicle access to it over TH #20. The Town has arbitrarily taken away good access over the unnamed road, first by destroying the culvert under the road and then by classifying it as a trail. Whatever access Mr. Rhodes has to his property over TH #20 is difficult because of the steep incline near the Bechards' house. That is one reason he wants to improve TH #20. The "thoroughfare from the west," which the Town claims offers reasonable and similar access, winds across fields, climbs over steep inclines in the ledges and is impassable during certain times of the year.

Again, in this case the Town contends there is no legal basis for the plaintiff's claim for damages as a result of thee Town's violations of the Common Benefits Clause of the Vermont Constitution. For the reasons previously stated, this Court finds that the Town's contention has no merit.

This court finds that the plaintiff has suffered damages as a result of the Town's violations of the Vermont Constitution. Mr. Hamlin, the engineer who prepared a plan for the improvement of TH #20, testified that with respect to the requirements of the Town's road standards, the unnamed road provided a route superior to TH #20 to access the Rhodes property. He made specific reference to the pitch and angle requirements of the road standards and the fact that it would be easier to meet those requirements with improvements to the unnamed road, which has a fairly consistent pitch, unlike TH # 20.  He further concluded that pitch considerations together with the presence of significantly smaller ledge outcroppings on the unnamed road, would make improvements to the unnamed road a less expensive improvement project in order to obtain the same amount of road as proposed for the TH # 20

21

improvement. T. 5/18/09 pp. 166-169

The Town argues that because Judge Crawford noted that the Town had the power to classify the unnamed road as a trail there can be no damage award against it. However, even if the Town had the power to classify the unnamed road as a trail, it did not have the right to use that power in a way that violated Mr. Rhodes' rights under Article 7 of the Vermont Constitution. . Based on the evidence submitted, it is clear that the Town's rationale for its classification decision concerning the unnamed road was disingenuous. The real reason for the Town's decision was to deny Mr. Rhodes access to his property in order to benefit the Bechards.

With respect to damages, the classification of the unnamed road as a trail has caused Mr. Rhodes to lose over 2,500 feet of road frontage on the 50 acres at the western end of his property.  The classification served to prevent improved vehicle access to the property, which access was necessary to make it possible to develop those 50 acres.  Mr. Mark Lareau, a licensed real estate appraiser, testified that he prepared two valuations of those 50 acres. One valuation was based on its classification as a trail and another valuation was based on its classification as a Class 4 highway.

Mr. Lareau's testimony was clear that, in light of town zoning regulations, the loss of 2500 feet of road frontage served to limit the development which could occur on the subject acreage.  In the first instance, Mr. Lareau valued the property as open land with access by a trail.  The value of the 50 acres of open land with access only by trail is $70,000.00.  In the second instance, Mr. Lareau valued the property as if the unnamed road were a Class 4 road and could be utilized by motor vehicles.  Access to the subject acreage by a Class 4 road would allow for development and, in accordance with town zoning regulations, the 50 acres could be divided into ten building lots, which Mr. Lareau valued at $100,000.00 per lot. Since Mr. Lareau estimated the costs of gaining permits and making improvements to the unnamed road at $100,000.00, the parcel would have a net value of $900,000.00. Therefore, Mr. Rhodes has suffered damages of $830,000 – the difference between the value of the 50 acres as open land as opposed to their value with vehicle access over the unnamed road. Mr. Lareau's testimony was entirely credible.

Based on the foregoing, the Court finds that the damages suffered by the Plaintiff as a result of the Defendant's discriminatory classification of the unnamed road is the difference

between the value of 50 acres of his property as open land and the value of that property when accessible by a Class 4 highway. This means that the plaintiff has suffered consequential damages of $830,000. Obviously, the defendant has suffered other damages because he could not sell land with good vehicle access over TH #20 for many years. However, the Vermont Supreme Court has held that missed sale opportunities cannot form the basis for the imposition of a damage award unless such a claim is supported by evidence of an actual offer by a prospective purchaser. **Bourne v. LaJoie 149 Vt. 45, 53 (1987)** Otherwise, such a claim is based on "mere speculation". There is no such evidence here. Therefore, this Court will not make an award for the general loss of value claimed by Mr. Rhodes.

The plaintiff has asked that the Court impose punitive damages on the Town because of the Select Board's violations of his constitutional rights. This Court finds that the reasons for the imposition of punitive damages are not present in this case. A punitive damage award would punish the taxpayers of the Town, not the Select Board members who have acted with malice. There is simply no evidence here that the taxpayers of the Town are "directly responsible" for the violations of Mr. Rhodes constitutional rights. **See City of Newport v. Factory Concerts, 453 U.S. 247, 263 (1981).** For that reason, the court will not impose punitive damages.

## CONCLUSION

Based on the foregoing, the Court awards Judgment for the Plaintiff and against the defendant, Town of Georgia as follows:

1. The Town is Ordered to approve Mr. Rhodes' application for permission to improve TH #20 as described in the plans prepared by Hamlin Engineering and set forth in Plaintiff's Exhibits 20A, 20B, 21, 22, 23, 24, 25, 26, and 27. If that permission is not granted in 30 days, the Clerk of the Franklin Superior Court will immediately schedule a contempt hearing in which the Town must show cause why it should not be held in contempt and required to pay daily fines until Mr. Rhodes' application is granted.

2. The Town of Georgia shall reimburse Mr. Rhodes the sum of **Five Thousand Dollars** ($5,000) for attorneys' fees incurred to bring this enforcement action.

3. The Court orders the Town to pay Mr. Rhodes **Eight Hundred and Thirty**

**Thousand Dollars**  ($830,000) to compensate him for damages that resulted from its violation of the Common Benefits Clause of the Vermont Constitution in the unnamed road case.

14  January  2010                                            _____
                                                             Ben W. Joseph, Presiding Judge
                                                             Franklin Superior Court